61 N.J. Super. 582 (1960)
161 A.2d 760
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM DUNLAP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1960.
Decided June 9, 1960.
*584 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Martin F. Caulfield argued the cause for appellant.
Mr. Alvin E. Granite, Gloucester County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The Gloucester County grand jury brought separate indictments against defendant for kidnapping (N.J.S. 2A:118-1) and rape (N.J.S. 2A:138-1) of L.F. on February 1, 1959. Benjamin Devine, who was with defendant, was similarly indicted. The two were tried together, found guilty after an extended jury trial, and sentenced to State Prison terms of 30 to 50 years on the kidnapping charge and 25 to 30 years for rape, the sentences to run concurrently.
Defendant and Devine were taken into custody a few days after the criminal episode. They were interrogated at the local State Police barracks and each signed a statement describing in some detail the events of the early morning in question. These statements were very similar in content. The men related at length what they had done before taking the girl from her parked car and forcing her into their own, the events that ensued during an extended drive through the area, and her escape from the car to a nearby home. The accused were then taken before the West Deptford municipal magistrate and pleaded guilty to complaints of kidnapping after stating they did not want the services of an attorney. They were next taken before the Deptford municipal magistrate and pleaded guilty to rape. Following the return of the indictments, they pleaded not guilty and stood trial.
Defendant first argues that his confession was improperly admitted into evidence, since it was not shown that it had been read to or by him before he signed it, citing State v. Smith, 27 N.J. 433 (1958); State v. Monahan, 16 N.J. *585 83 (1954); State v. Cleveland, 6 N.J. 316 (1951); and State v. Donato, 106 N.J.L. 397 (E. & A. 1930). There was no testimony that defendant's statement was ever read to him or by him after it had been taken and before he signed it by printing his name on the last page and initialing the preceding pages.
After defendant had signed, the police authorities took Devine's statement. Although he denies that he read it or that it was read to him, he signed it, allegedly because he was afraid of what the police would do to him. The testimony of the three police officers who were present was entirely to the contrary; they said the statement was freely given, typed out, read to Devine, and he then signed the last page and initialed the others. The proofs show that defendant was then brought into Devine's presence and told that Devine's statement would be read to him. Defendant was asked if he would sign the statement voluntarily if he found it true and correct, and he said he would. Devine's statement was then read to him and, after being asked whether it was true and correct, he said, "That's close enough," and he signed it by printing his name.
As noted, the Devine statement paralleled defendant's. Defendant voluntarily signed it after it had been read to him and he had acknowledged it as correct. Insofar as that statement detailed defendant's participation in the alleged kidnapping and rape, it became as much his written confession as though prepared by his own hand, and was admissible against him under the above cited decisions.
In State v. Monahan, above, defendant signed as true a statement made by his son after it had been read to him, the son also signing. Defendant claimed error in the admission of the statement into evidence. The Supreme Court found otherwise, stating:
"Here, however, the statement in substance is the appellant's own statement and derives force from the admission of the prisoner himself of the inculpatory concessions. It was signed by him in three different places and acknowledged by him in writing to be accurate and `every word of it is true.'" (16 N.J., at page 90)
*586 The fundamental object of proof of a confession is to render it trustworthy. State v. Donato, above, 106 N.J.L., at page 406. Whether defendant was present when Devine gave his statement is not material in the circumstances. The fact that it was read to him and he knew its contents before he signed it certainly indicates its trustworthiness.
After hearing the testimony of the police officers and of defendant and Devine relating to the circumstances under which the statements were made, the trial judge ruled that the statements were voluntary. As was observed in State v. Smith, above, 27 N.J., at pages 459-460, whether a statement or confession is voluntary depends upon the facts in each case. The determination of the trial court will not as a rule be disturbed on appeal when there is sufficient evidence to support it. Such is the case here; indeed, defendant does not argue the involuntary character of his statement on this appeal.
The State contends that defendant's statement also was admissible in evidence as a voluntary confession, arguing that State v. Cleveland, above, upon which defendant heavily relies, is distinguishable because Cleveland's statement was not transcribed at the time it was given and he was not given an opportunity to read it or have it read to him, or to sign or otherwise acknowledge its correctness. Here, it is said, defendant's statement was typed as it was given, and there was no objection to its admissibility on the ground that although defendant had signed it, it had never been read to or by him. The only objection made at the trial was that the statement was not voluntary. The State cites State v. Donato, above, and State v. Foulds, 127 N.J.L. 336 (E. & A. 1941). Those cases are clearly distinguishable on their facts. However, we conclude that even if defendant's statement was introduced in error, the fact that an almost identical confession made by Devine and adopted by defendant was introduced, made the former harmless.
Defendant next complains that prejudicial remarks by the prosecutor, emphasizing racial differences, tainted the *587 verdict. In his summation the prosecutor several times referred to the fact that on the night in question defendant and Devine  they were Negroes  were out looking for a white girl. This, it is claimed, was inflammatory, citing State v. D'Ippolito, 19 N.J. 540 (1955), and State v. Bogen, 13 N.J. 137 (1953). It is to be noted that defense counsel at no time made objection to these remarks.
In his statement Devine said that he and defendant "talked about picking up a white girl. * * * We decided we were going to pick up a white girl. * * * We pulled into a lovers' lane to try and pick up a white girl." There were similar references in defendant's statement. The prosecutor's remarks were therefore based upon a fact in evidence.
One of the State's witnesses, Blair, had testified that he and his girl had been parked along the road where the kidnapping occurred. A Ford car of the same description as defendant's automobile had pulled up behind them and blocked off the driveway. Two men got out and one tried to get in on the driver's side and the other on the passenger's side. The doors were locked so they tried the rear doors, and while they were doing this Blair started up the car and drove away. He recognized Devine as one of the men. The prosecutor's references to defendant and Devine having been out looking for a white girl tied in with this testimony and refuted their allegations that they were specifically looking for L.F.
We find the prosecutor's references not prejudicial or inflammatory. As was recently said in State v. Johnson, 31 N.J. 489, 510 (1960):
"Generally a prosecutor, in his summation, may discuss only the facts shown or reasonably suggested by the evidence. * * * But so long as he confines himself to the facts and reasonable inferences, what he says in discussing them, by way of comment, denunciation or appeal, will afford no ground for reversal. * * * The prosecutor is entitled to sum up the State's case graphically and forcefully. It is unreasonable to expect that criminal trials will be conducted without some show of feeling. Defense counsel traditionally make dramatic appeals to the emotions of the jury. *588 In these circumstances, a prosecutor cannot be expected to present the State's case in a manner appropriate to a lecture hall. * * *" (citations omitted)
The trial court carefully charged the jury to disregard any bias or prejudice and made it clear that the case should be decided solely on the evidence. He pointed out that there was a white complaining witness and two Negro defendants. He stressed that the defendants were entitled to all legal safeguards, and prejudice had no place in the jury's deliberations. Not only did the defense make no objection to the prosecutor's summation, but it requested no special instruction from the court.
Defendant next contends, without citation of supporting authority, that there was no violation of N.J.S. 2A:118-1, the kidnapping statute, because he and Devine did not take Miss F. to a specific place. The basis of this argument is the wording of the statute:
"Any person who kidnaps or steals or forcibly takes away a man, woman or child, and sends or carries, or with intent to send or carry, such man, woman or child to any other point within this state, or into another state, territory or country * * * is guilty of a high misdemeanor * * *."
Defendant's argument is based upon an artificial reading of the statutory language.
The victim testified she was forcibly put into defendant's car against her will and was driven a considerable distance through the area while defendant and Devine in turn raped her on the back seat of the car. Clearly, she was forcibly taken away from the car in which she was parked and carried to another point or points within the State by two men who obviously had the intent to do what they did.
Statutory language is to be given its plain and ordinary meaning, in the absence of specific intent to the contrary. Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319, 325 (1954). It must be given a reasonable construction in order to promote the efficient enforcement of our criminal law, to prevent crime and to promote the ends of justice. As the court in *589 People v. Hope, 257 N.Y. 147, 152, 177 N.E. 402, 404 (Ct. App. 1931), said of the New York kidnapping statute (Penal Law, § 1250), "The object of the statute and of the common law on the subject was the same, to secure the personal liberty of citizens and to secure to them the assistance of the law necessary to release them from unlawful restraint." Viewed in this light, defendant's argument that no kidnapping took place because the men did not take their victim to any specific destination, is entirely untenable. They interfered with her personal liberty by forcibly removing her from a seemingly safe place and to their car, which then was driven a considerable distance from the original spot, with rape committed on the way.
The California kidnapping statute is quite similar to ours, and its treatment by the courts of that state is instructive. California Penal Code, § 207, declares:
"Every person who forcibly steals, takes or arrests any person in this state, and carries them into another country, state or county, or into another part of the same county * * * is guilty of kidnapping."
In People v. Melendrez, 25 Cal. App.2d 490, 77 P.2d 870 (D. Ct. App. 1938), the victim was forced out of his car at knifepoint and ordered to walk a distance of 50 to 75 feet and remain there for about five minutes. The court held that an act of kidnapping was thereby committed. In People v. Chessman, 38 Cal.2d 166, 192, 238 P.2d 1001, 1017 (Sup. Ct. 1951), the court said:
"* * * The fact that Regina in being kidnapped or carried away was forced to move only 22 feet does not make her abduction any the less kidnapping within the meaning of the statute. She was taken from the car of her chosen escort, and from his company, to the car of defendant and into the latter's company and there detained as a virtual prisoner and forced to submit to his demands. It is the fact, not the distance, of forcible removal which constitutes kidnapping in this state (People v. Rancho [Raucho] (1935), 8 Cal. App.2d 655, 665 [47 P.2d 1108] [held, as alternative ground of decision, that forcing victims to cross street and enter automobile constituted `kidnapping and carrying away']; People v. *590 Cook (1937), 18 Cal. App.2d 625, 627 [64 P.2d 449] [dragging victim from sidewalk into adjacent house constituted kidnapping]; * * * People v. Shields (1945), 70 Cal. App.2d 628, 630 [161 P.2d 475] [evidence that defendant carried child from front of house to roof supported conviction of kidnapping]; People v. Oganesoff (1947), 81 Cal. App.2d 709, 711 [184 P.2d 953] [evidence that defendant forcibly carried victim from automobile in front of his house into the house supported conviction for kidnapping]; see Cox v. State (1931), 203 Ind. 544, 550 [177 N.E. 898, 181 N.E. 469] [carrying child 90 feet was within statute which denounced forcibly carrying a person `from any place within this state']; State v. Taylor (1940), 70 N.D. 201, 209 [293 N.W. 219] [victim compelled to drive defendant in victim's car for a very short distance; `Where asportation is charged, the distance removed is not material']."
See, also, People v. Loignon, 160 Cal. App.2d 412, 325 P.2d 541 (D. Ct. App. 1958), where defendant pulled a child into his car, after he had asked if he wanted to take a ride and received a negative answer. When defendant started his motor, the child opened the door and jumped out. A conviction for attempted kidnapping was sustained.
Finally, defendant asserts that the verdict was contrary to the weight of the evidence, inasmuch as his victim, upon being questioned by the State Police shortly following her escape from his car, stated that she had not been raped. Whatever may have motivated that statement at the time  perhaps shame  her account at the trial was clear and unshaken: she had been kidnapped and taken advantage of, forcibly and against her will. Her abduction was partially corroborated by her male companion in the parked car, Laige. Blair and Motorma, trying to extricate their car from the sand, noticed Miss F.'s Pontiac some 100 yards away, saw another car drive up, heard a woman's scream, and then saw the second car drive away. Reen, in whose home she sought refuge, testified that her slacks were ripped, her jaw swollen; she was shaking and so nervous she could just about talk. Sergeant Pulio of the local police force also testified to the ripped slacks, the swollen jaw, and the woman's nervous condition. He found one of her gold plated bobby pins and a button that had been ripped *591 from the slacks in defendant's car. Devine's statement (to say nothing of defendant's) gave positive corroboration to the complaining witness' story.
The credibility to be accorded Miss F.'s testimony, as well as that of the other State witnesses and the accused, was for the jury to decide. Unless it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion, we should not disturb it. R.R. 1:5-1(a); State v. Haines, 18 N.J. 550, 565 (1955).
Affirmed.