Reginald **SAMUELS** and Perry Matthews,
Defendants Below, Appellants,

v.

The **STATE** of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

April 11, 1969.

Richard Allen Paul, Asst. Public Defender, for defendants below, appellants.

John P. Daley, Deputy Atty. Gen., for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

Reginald Samuels and Perry Matthews were indicted in the Superior Court upon charges of kidnapping, rape, and robbery. They were found guilty by a jury of the kidnapping and rape; on the charge of robbery, they were found guilty of the lesser included offense of assault. They have appealed from the sentences imposed, contending (1) that the evidence was insufficient to justify their conviction; (2) that the kidnapping statute is not applicable when the purpose of an abduction is the commission of an independent serious crime; and (3) that certain testimony and exhibits were wrongfully admitted into evidence.

## I

Appellants first contend that the evidence did not justify a guilty verdict because of the rule which requires that circumstantial evidence must be not only consistent with guilt but also inconsistent with any other rational conclusion. Holland v. State, 9 Terry 559, 107 A.2d 920. We summarize that evidence in the light most favorable to the State. Bailey v. State, Del., 231 A.2d 469.

The victim was a woman about fifty years of age. About midnight in August, on King Street near 9th Street in Wilmington, two or three men suddenly seized and pushed her into a car with such force that she became unconscious. She regained consciousness for a moment and realized that the car was moving. She noticed then that the driver was a Negro. She quickly lost consciousness again and remembers nothing more until she woke up about 3:00 a. m. and found herself in an abandoned car on lands of the Marine Terminal, apparently about two and one-half miles from 9th and King Streets. She had been raped. Her shoes, belt, girdle and handbag were missing. A wallet which had been in the handbag was later found on the ground near the abandoned car; part of the paper money was gone, as was a note or memorandum which had been in the wallet.

A witness saw the original abduction. He was getting his own car from the rear of a parking lot which faces King Street. He was able to see that the car used in the abduction was a white 1959 Chevrolet, and that the abductors were two or three Negroes, one of whom was wearing a white hat or cap and a tan shirt. The witness immediately went into a barroom and called the police, who promptly caused an "all-car" message to be issued over the radio to all officers on duty.

A few minutes before 1:00 a. m., a workman at the Marine Terminal saw a car coming from the direction of the abandoned automobile inside the cyclone fence surrounding the terminal grounds. Its lights were off, but were turned on after the car got out on Christiana Road.

About 1:10 a. m., two police officers were in a car at Thatcher Street and Northeast Boulevard when an automobile passed them at a high rate of speed. They followed it and saw that it was a white Chevrolet fitting the "all-car" description they had received. The officers turned on their flashing red signal light and blew their siren, whereupon the white car increased its speed. The ensuing chase went on for several blocks through various streets, during which the Chevrolet moved against traffic on one-way streets and sped through two or three stop signs. Finally, it slowed down and the two occupants jumped out while it was still moving. The men attempted to run away, but the officers captured them. Those men, both Negroes, were these appellants. Upon examining the white car, the officers found on the rear seat and floor the victim's shoes, belt and girdle, as well as the note which had been in her wallet. They also found a white golf cap. Samuels was wearing a tan shirt.

It was learned that the white Chevrolet was owned by a Mr. Davis. He testified that he and Samuels had ridden in it to a dance about 11:00 p. m. Samuels did the driving and retained the keys. Davis did not see Samuels again at the dance, which continued until 2:00 a. m.; shortly after midnight, Davis tried to find Samuels, but someone told him that Samuels had previously left. Davis also testified that Samuels wore a white hat to the dance.

Microscopic and chemical tests were made of the victim's clothing, the clothing of both defendants, and the rear seat of the Chevrolet. Semen stains were found on the underpants of both appellants. Fibers having the same colors, materials, textures and size as the covering of the car seat were found on the clothing of all three persons. Fibers similar to those in the

victim's dress matched some found on the clothing of both defendants and on the car seat.

The defendants testified that they left the dance in Claymont in the Chevrolet about 12:15 a. m. to get Matthew's wife; that, at their home, Matthews learned that she had left to go to the dance, whereupon they started back, and were chased and arrested by the police. They explained their flight by their fear of being sent to jail for speeding. They flatly denied that the victim's garments were in the car when the police stopped them. They denied any knowledge of the crimes charged.

■ The evidence which pertains to the identity of the assailants is circumstantial. We nevertheless think that the case was properly submitted to the jury on all three counts. In our opinion, appellants have suggested no rational view of the State's evidence which is consistent with innocence. The suggestion that one or both might have gotten out of the car after leaving the dance, and some other person or persons used it in committing the crimes, later returning it to these appellants, is inconsistent with their own testimony; the time sequence, considered with the distances traveled, renders that suggestion extremely improbable. Their flight from the police was carried to an extent far beyond what one would expect if their only offense were speeding.

The Court below gave the usual instructions to the jury with respect to robbery, including a charge that the jury could, under this count, return a verdict of guilty of larceny or assault if the evidence so warranted. See T. 11 Del.C. §§ 3705 and 3707. As to this part of the indictment, appellants suggest that the money missing from the victim's wallet may have been spent or lost by her. The suggestion that she may have spent it is contrary to her testimony. How only some, but not all, of the bills could have dropped out of both the wallet and the handbag is difficult to visualize. The only reasonable assumption

is that they were taken out; that assumption finds some support in the fact that the note, which was also in the wallet, was found on the floor of the Chevrolet. There is nothing to indicate that anyone except the abductors could have taken it. Here again, the matter was for the jury.

II

Appellants contend that the charge of kidnapping should have been dismissed by the Court below upon the theory that the abduction was ancillary to the rape; they argue that convictions for kidnapping should be limited to those abductions made for the classic purpose of obtaining a ransom. This argument was accepted in People v. Levy, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842, and People v. Lombardi, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206. In Levy, the victims were detained and driven about 27 blocks for the purpose of robbery. The Court, in overruling People v. Florio, 301 N.Y. 46, 92 N.E.2d 881, 17 A.L.R.2d 993, pointed out that the New York statute was so broad that it would literally include any detention for a relatively short time, and even an asportation from one room of a house to another. In Lombardi, a defendant drugged three young women on different occasions, drove them to a motel and sexually assaulted them. Again, the Court felt justified in refusing to apply the broad New York kidnapping statute.

The Delaware statute (11 Del.C. § 623 (a) ) reads as follows:

"Whoever abducts, leads, decoys, entices, takes or carries away any person, with the intent to detain or conceal such person or with the intent to deprive any person of his liberty, is guilty of kidnapping and a felony, * * *."

We have found no case from any other State which goes so far as the cited New York cases. A number of decisions have allowed convictions of kidnapping to stand in which the facts were very similar to those here involved. State v. Brown, 181

**204**

Kan. 375, 312 P.2d 832; State v. Coursey, 71 Ariz. 227, 225 P.2d 713; State v. Berry, 20 Wash. 495, 93 P.2d 782; State v. Dunlap, 61 N.J.Super. 582, 161 A.2d 760. Others are cited in 1 Am.Jur.2d 174 and 51 C.J.S. Kidnapping § 1, p. 495. Appellants call attention to the commentaries annexed to the proposed new Delaware Criminal Code (which is not a part of our law) in which criticism is made of the broad terms of our present statute. We note, however, that the proposed Code includes the unlawful restraint of another for the purpose of sexual abuse.

▮▮▮ Certainly, the fact that the offenses charged arose out of the same transaction is no bar to a prosecution for all of them. State v. Heitter, 7 Storey 595, 203 A.2d 69; each offense required proof of independent elements. Our statute includes in its definition an abduction with the intent "to detain or conceal" or "to deprive any person of his liberty." The acts done here—abducting a woman for purposes of rape and assault, followed by asportation for some two and one-half miles—clearly fall within the statute. We are not convinced that we should, in this case, impose upon that statute the limitation which appellants ask us to impose; if a change in the statutory language is proper, it should be made by the Legislature.

### III

▮▮▮ Appellants finally contend that all of the evidence concerning the fibers and the semen found on their clothing was inadmissible. We disagree. Standing alone, that evidence would possibly be inadequate to prove the identity of the assailants. But it does not stand alone. When considered with all the rest of the State's evidence which had been presented before this testimony was offered, it is of help in demonstrating their identity. 1 Wigmore on Evidence, §§ 29, 38; Garboctowski v. State, 2 W.W.Harris 386, 123 A. 395. Appellants suggest that its probative value was outweighed by its prej-

udicial effect. When such a contention is advanced at a trial, its determination is largely within the trial Judge's discretion. State v. Reardon, R.I., 219 A.2d 767. We cannot hold that there was an abuse of that discretion in this case.

The judgments below will be affirmed.