399 A.2d 694
**COMMONWEALTH of Pennsylvania**
v.
**Jonas HUGHES, a/k/a James Hughes, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

' Decided March 9, 1979.

Robert F. Pappano, Assistant Public Defender, Chester, for appellant.

Frank T. Hazel, District Attorney, Media, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

Appellant was convicted following a jury trial of rape, kidnapping, unlawful restraint, terroristic threats and possession of instruments of a crime. On appeal, appellant claims that the evidence was insufficient to support the definition of the statutory crime of kidnapping and that the trial court abused its discretion in refusing the appellant's

request at trial for a continuance. We disagree and affirm the conviction.

The facts, taken in a light most favorable to the Commonwealth, the verdict winner, *Commonwealth v. Bastone*, 466 Pa. 548, 353 A.2d 827 (1976), are essentially as follows. On August 11, 1976, Cynthia Lee Helfrich drove Howard Harrison to Media, Pennsylvania for an appointment with his attorney. Arriving early before the law offices opened, the two waited outside on a public bench. While they were waiting, appellant approached them and attempted to engage them in conversation. When appellant's conversation was not encouraged, he left. Mr. Harrison then went to his attorney's office to keep the scheduled appointment. Ms. Helfrich did not accompany Mr. Harrison into the office building because she was casually dressed and without shoes. Once Ms. Helfrich was alone, appellant returned, sat beside her and resumed his one-sided conversation. Appellant asked Ms. Helfrich if she wanted to go for a ride or smoke marijuana with him. When Ms. Helfrich refused, appellant left. Minutes later, the appellant returned, placed a sharp kitchen knife to her throat and stated "I think you are going for a ride." Appellant forced Ms. Helfrich to walk to his car one and one-half blocks away and threatened to kill her if she resisted. Once in the car, he drove around the Media area in a reckless manner for approximately two miles and stopped his car in an abandoned lot surrounded by trees. He then forced Ms. Helfrich into the wooded area where he raped her. He then returned her to a place near the attorney's office and fled. The abduction occupied somewhat less than thirty minutes.

The statutory crime of kidnapping is defined in 18 Pa.C. S.A. § 2901 in pertinent part as follows: "A person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions: . . . (2) to facilitate commission of any felony or flight thereafter." Appellant contends that

the jury was unable to conclude as a matter of law that the victim was removed a "substantial distance under the circumstances" or "confine[d] . . . for a substantial period." Appellant focuses in on the word "substantial" and asserts that two miles and thirty minutes is not "substantial" within the statutory framework.

In attempting to ascertain the legislative meaning of the word "substantial," we find that legal authority is sparse. Two cases and no legislative history in this jurisdiction offer little guidance. In *Commonwealth v. Ruehling*, 232 Pa.Super. 378, 334 A.2d 702 (1975), this court held that thirty miles was a "substantial distance." In *Commonwealth v. Larry*, 467 Pa. 501, 359 A.2d 388 (1976), the defendant forcefully abducted the victim from her home one night after stabbing her three times. The defendant delivered the victim to the hospital the following morning when she was pronounced dead. At trial in *Commonwealth v. Larry*, supra, a medical examiner testified that the victim suffered numerous blows with a blunt instrument in addition to the three knife wounds. The Supreme Court held that the evidence was sufficient to sustain a conviction of criminal homicide which occurred during the perpetration of a kidnapping. Implicit in its holding was the fact that the elements of the statutory definition of kidnapping had been met although there was no discussion of the length of time involved nor the distance which the defendant had transported the victim.

In these cases, the courts have not attempted to establish a definition of the concepts of "substantial distance" nor "unlawfully confine[d] . . . for a substantial period." These definitions cannot be confined to a given linear distance nor a certain time period. This is clear from a consideration of the most obvious evil at which the statute is aimed—the abduction of a victim to hold for ransom. Certainly, the guilt of an abductor cannot depend upon the fortuity of the distance he has transported his victim nor the length of time elapsed before the ransom is paid. "Substantial" is a limitation within the statutory framework of kidnapping, and in ascertaining the proper construction of

that limitation it is useful to consider the experience of other jurisdictions and § 212.1 of the Model Penal Code (M.P.C.) which is essentially similar to the Pennsylvania kidnapping statute.

In most states, as in Pennsylvania, kidnapping is one of the most serious crimes carrying with it extremely severe criminal sanctions. It developed that in other jurisdictions which had a broader definition of kidnapping [1] than Pennsylvania, the prosecutors would charge a defendant with kidnapping in order to obtain a higher permissible sentence whenever there was any forcible movement of the victim. Convictions were upheld even when the movement was incidental to the commission of a separate crime. See, e. g., *State v. Johnson,* 67 N.J.Super. 414, 170 A.2d 830 (1961); *State v. Dunlap,* 61 N.J.Super. 582, 161 A.2d 760 (1968); *People v. Wein,* infra; *People v. Chessman,* 38 Cal.2d 166, 238 P.2d 1002 (1951); *State v. Ingland,* infra; *State v. Brown,* 181 Kan. 375, 312 P.2d 832 (1957); *State v. Jacobs,* 93 Ariz. 336, 380 P.2d 998 (1963). This position was taken to extremes in *People v. Wein,* 50 Cal.2d 383, 326 P.2d 457, cert. denied 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99, reh. denied, 358 U.S. 896, 79 S.Ct. 153, 3 L.Ed.2d 122 (1958). In that case, the defendant was convicted of kidnapping when he forced his victim to go from room to room within her house until she found her wallet, he then robbed and raped her. A later case citing *Wein* held that "*any* carrying away is sufficient." *State v. Ingland,* 278 N.C. 42, 51, 178 S.E.2d 577, 583 (1971) [Emphasis in original]. This equivocal situation was clarified in a California case when the Supreme Court of that state reversed its line of cases which held that any movement constituted kidnapping. In reversing a conviction for kidnapping, the Supreme Court instructed that "movements of the victim [which] are merely incidental . . . [to] the robbery and do not substantially increase

1. An example of a broader construction of kidnapping is North Carolina's definition: "Kidnapping is defined generally as the unlawful taking and carrying away of a human being against his will by force, threats or fraud." *State v. Dix,* 282 N.C. 490, 193 S.E.2d 897, 898 (1973).

the risk of harm over and above that necessarily present in the crime of robbery itself" are outside the scope of the kidnapping statute. *People v. Daniels,* 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 238 (1969).

In *People v. Florio,* 301 N.Y. 46, 92 N.E.2d 881 (1950), the New York Court of Appeals upheld a conviction of kidnapping where the defendants had inveigled a woman into their car, drove her to an isolated spot and raped her. In *People v. Levy,* 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965), the Court of Appeals expressly overruled *Florio* and reversed a conviction of kidnapping by defendants who abducted the victims in their own car, drove them a distance of 27 blocks for approximately 20 minutes while robbing them. The Court of Appeals stated, "In the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the typing up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it." *People v. Levy,* 15 N.Y.2d at 165, 256 N.Y.S.2d at 796, 204 N.E.2d at 844. In *People v. Lombardi,* 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967), the Court in a four to three decision reversed a conviction for kidnapping where the defendant on three separate occasions drugged female employees, transported them from Manhattan to Queens where he made improper and unconsented to sexual advances. The majority held that the case was controlled by *Levy* which had overruled *Florio*.[2]

**2.** Several courts have expressly declined to impose substantial asportation requirements upon a broadly defined kidnapping statute because they felt that any correction in the law should come from legislature. See, *State v. Ayers,* 198 Kan. 467, 427 P.2d 21 (1967); *Davis v. State,* 204 Kan. 816, 466 P.2d 311 (1970); *Samuels v. State,* 253 A.2d 201 (Del.Supr. 1969); *State v. Morris,* 281 Minn. 119, 160 N.W.2d 715 (1968). Several courts however have followed the lead of the New York and California courts to limit the reach of their state's kidnapping statute. See, e. g., *State v. Dix,* 282 N.C. 490, 193 S.E.2d 897 (1973); *People v. Adams,* 34 Mich.App. 546, 192 N.W.2d 19 (1971).

The framers of the Model Penal Code were aware of the experience of other jurisdictions when they drafted the model kidnapping statute. They recognized that "[w]hen an especially outrageous crime is committed there will be a public clamor for the extreme penalty and it is asking too much of public officials and juries to resist such pressures." Model Penal Code § 212.1, Comment (Tent.Draft No. 11, p. 14, 1960). To combat the undesirable situation of charging kidnapping to obtain a higher permissible sentence, the framers of the Model Penal Code drafted the kidnapping statute restrictively. The statute reads in part as follows: "A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period in a place of isolation . . . (b) to facilitate commission of any felony . . ." Model Penal Code § 212.1. The drafters made explicit their "purpose to preclude kidnapping convictions based on trivial changes of location having no bearing on the evil at hand." Model Penal Code § 212.1, Comment (Tent.Draft No. 11, p. 16, 1960).

Drawing from the experience of other jurisdictions, the comments to the Model Penal Code and the fact that the Pennsylvania statute is similar to the Model Penal Code statute of kidnapping, it is clear to us that the legislature intended to exclude from kidnapping the incidental movement of a victim during the commission of a crime which does not substantially increase the risk of harm to the victim.

Turning to the case at hand, we find that the movement of the victim was not a trivial incident to the other crimes charged. Although the victim was removed only a distance of two miles, the wooded area to which she was brought was in an isolated area, seemingly beyond the aid of her friends and police. Under the circumstances, two miles is a substantial enough distance to place the victim in a completely different environmental setting removed from the security of familiar surroundings. (In addition, the

movement itself seriously endangered the victim as she was subject to a knife poised at her throat and to the reckless driving of appellant. At one point, appellant drove onto a one-way street in the wrong direction.) Furthermore, once isolated, the appellant was free to deal with his victim at will. The fact that appellant returned his victim after raping her says nothing of the terrifying and desperate reaction that such a removal might have upon a victim. In such a case, the singular fact of removal compounded the risk of harm to the victim which was distinct from the risk inherent in the crimes which the movement accompanied. Under these circumstances, it is evidently clear that the jury had adequate grounds for finding that the victim was removed a "substantial distance." We need not decide whether the 30 minutes involved constitutes a "substantial period" under the Model Penal Code. We will state, however, that what is a "substantial period" in time can depend on the mental state of the victim. The fright that can be engendered in 30 minutes can have the same debilitating effect on one person as 30 hours may have on another. Accordingly, the conviction of kidnapping is sustained.

The second contention of appellant is that the trial judge erred in failing to grant a continuance. On November 8, 1976, the day of trial, appellant requested that the court grant a continuance for at least one day for the purpose of securing the transcript of testimony of Ms. Helfrich taken during the preliminary hearing. The court denied the request for a continuance and the trial commenced. It is well settled that the grant of a continuance rests within the sound discretion of the trial court and that the decision to deny the continuance will not be reversed unless a clear abuse of discretion is shown. *Commonwealth v. Andrews*, 245 Pa.Super. 547, 369 A.2d 762 (1977). In this case, there was no abuse of discretion. Appellant had two and one-half months prior to trial to secure the transcript of the preliminary hearing. Furthermore, the prosecution cooperated with the defense by calling a prosecuting witness out of turn in order to insure the defense an extra day in which to

secure the transcript before cross-examining Ms. Helfrich the following day. Under these circumstances, there was no reversible error in denying the continuance.

For the foregoing reasons, the judgment of sentence of the court below is hereby affirmed.

JACOBS, former President Judge and HOFFMAN, J., did not participate in the consideration or decision of this case.