**COMMONWEALTH OF PENNSYLVANIA,**
**Appellee,**

v.

**Willie James GOODING, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2003.
Filed Feb. 25, 2003.

Royce L. Morris, Harrisburg, for appellant.

Sandra Thompson, Assistant District Attorney, York, for Commonwealth, appellee.

Before STEVENS, GRACI, and OLSZEWSKI, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Appellant Willie James Gooding appeals from a judgment of sentence for third-degree murder and kidnapping en-

tered on October 24, 2001. For the following reasons, we affirm.

¶ 2 The facts of this case, as stated by the trial judge in his Rule 1925(a) opinion, are as follows:

This matter arose out of the death of Arthur Irick on November 8, 1996. It was the Commonwealth's theory that [appellant] and three co-defendants, Charles Malloy, Antoine Brown and Cory Riera had conspired to kidnap and kill Mr. Irick. It was alleged by the Commonwealth that ... there was an attempt to rob [appellant] ... of drug proceeds. It was alleged that during this attempt shots had been fired at Mr. Malloy. It was alleged that after this shooting, ... [appellant and the other defendants] conspired to find the individuals who shot at them and to exact their own measure of justice.

The testimony at trial revealed that after the shooting. [appellant] drove around York with [the other defendants] looking for the individuals responsible for the shooting. In speaking with other individuals, they determined that Mr Irick would know who was involved in the shooting and therefore they drove around the city looking for him.

They picked [Mr. Irick] up at a pay phone ... and then ... picked up a .25 caliber semi-automatic pistol which would later be used as the murder weapon. Once they picked up the gun, the gun was placed in the possession of Mr. Malloy and Mr. Irick was taken to [the Starlight] apartment building in down town [sic] York in an attempt to locate the people who shot at Mr. Malloy earlier. Mr. Malloy and Mr. Irick exited one of the vehicles, went into the apartment lobby for a short period of time and then returned to the vehicles. At that time,

Mr. Malloy struck Arthur Irick in the head with either his fist and/or the gun.

Testimony at trial indicated that Mr. Malloy at that time made a motion as if he were going to kill Mr. Irick and Mr. Gooding as per the testimony, "waved him off." Mr. Gooding then instructed Mr. Malloy to follow him and in two separate vehicles then the two parties proceeded through the City of York to an industrial area that was isolated. Once arriving at the isolated industrial parking lot, Mr. Irick was forced from the vehicle that he was riding in and was then shot four times in the head which resulted in his death.

Opinion, 1/8/02, at 2–4. A jury convicted appellant of third-degree murder[1] and kidnapping.[2] The court below sentenced appellant to twenty to forty years' confinement for third-degree murder, and ten to twenty years' confinement for kidnapping, with the sentences to run consecutively. N.T. Sentencing, 10/24/01, at 10–11. Appellant filed a post-sentence motion to modify the sentence and for arrest of judgment, which was denied after a hearing on November 19, 2001. Appellant filed a notice of appeal on December 6, 2001.

¶ 3 Before this Court, appellant assigns five errors: that the evidence was insufficient as a matter of law to sustain the convictions; that the convictions were against the weight of the evidence; that the court below erred by refusing to exclude evidence of appellant's involvement in a drug distribution conspiracy from the jury; that the trial judge erred when he instructed the jury on the penalties for first- and third-degree murder; and, that the trial court abused its discretion by sentencing appellant to an aggregate confinement of thirty to sixty years. We will address each in turn.

*I. Sufficiency of the Evidence*

¶ 4 Appellant argues that the evidence was insufficient as a matter of law to sustain his convictions of third-degree murder and kidnapping. Our standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001) (citations omitted).

---

1.   18 Pa.C.S.A. § 2502(c).

2.   18 Pa.C.S.A. § 2901(a).

A person may be convicted of third-degree murder where the murder is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice aforethought. Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured."

*Commonwealth v. Pigg,* 391 Pa.Super. 418, 571 A.2d 438, 441 (1990). Further, "[m]alice may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Gonzales,* 415 Pa.Super. 564, 609 A.2d 1368, 1369 (1992).

¶ 5 The Commonwealth states in the most unhelpful manner simply that "the evidence was sufficient to establish that [appellant] engaged in the unlawful killing of Arthur Irick with malice." Appellee's brief at 10. It refers us to its Counterstatement of the Facts, which state that "[Charles Malloy] took [Arthur Irick] to the front of the car and shot him four or five times." Appellee's brief at 10; *see also* N.T. Trial, 9/12/01, at 524. Plainly, the Commonwealth concedes that appellant did not personally kill Arthur Irick.

¶ 6 However, one may be guilty of criminal homicide as an accomplice. The trial judge provided the jury with the following instruction:

You may also find the defendant guilty of the crime without finding that he personally engaged in the conduct required for the commission of that crime or even that he was personally present when the crime was committed. This is accomplice liability. A defendant is guilty of a crime of he is an accomplice of another person who commits that crime. A person does not become an accomplice merely by being present at the scene or knowing about a crime. He is an accomplice, if with the intent of promoting or facilitating the commission of that crime, he solicits, commands, encourages, or requests the other person to commit it or aids, agrees to aid, or attempts to aid the other person in planning or committing it.

N.T. Trial, 9/13/01, at 646–47. This instruction was an acceptable statement of the law in Pennsylvania. *See, e.g., Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580, 585, 586 (1998).

¶ 7 The trial transcript reveals that appellant was the driver of the lead vehicle and his passenger was Cory Riera. Antoine Brown drove the second vehicle, with Mr. Malloy and Mr. Irick as passengers. Mr. Brown and Mr. Riera, both convicted felons, testified at appellant's trial; and the facts supporting appellant's convictions come largely from their testimony.

¶ 8 Appellant and Mr. Brown drove to Mr. Riera's apartment, where the latter retrieved a gun, and gave it to Mr. Malloy. N.T. Trial, 9/12/02, at 512. They then drove to the Starlight apartment building to look for someone. There, Mr. Malloy and Mr. Irick left the cars for a period of time. *Id.* at 450–451, 515. After returning to the cars, Mr. Malloy leaned into appellant's vehicle and had a conversation with him before he struck Mr. Irick, possibly with the gun. *Id.* at 455, 468–469, 515–517. Mr. Irick got into the front seat of the second car, and Mr. Malloy got into the back. *Id.* at 453, 518. Mr. Riera testified that Mr. Irick was forced back into the car. *Id.* at 518. There was also testimony that Mr. Malloy made a gesture at the back of Mr. Irick's head and looked towards appellant who "told him, no," "waved him off," and told Mr. Brown to follow him. *Id.* at 467, 518, 520. Appellant led Mr. Brown's car to the site of Mr. Irick's killing. *Id.* at 457–58, 460, 519.

The cars were parked "side by side almost," with appellant's door closest to Mr. Irick in the front passenger seat of Mr. Brown's car. *Id.* at 522, 523. Mr. Malloy told Mr. Irick, who was "crying" and "begging" for his life, to exit the vehicle. *Id.* at 522. Mr. Riera exited appellant's vehicle and coaxed Mr. Irick to leave Mr. Brown's vehicle. *Id.* at 462. Mr. Malloy then executed Mr. Irick. *Id.* at 461–463, 524. Mr. Malloy left the scene in appellant's car. *Id.* at 524. Appellant stated that they should "keep this between us, nobody know." *Id.* at 525.

¶ 9 As stated at the beginning of this section, it is not for us to weigh the evidence. However, we can conclude that this testimony provided sufficient evidence for the jury to find beyond a reasonable doubt that appellant was an accomplice to the third-degree murder of Mr. Irick. Therefore, the evidence was sufficient to support the conviction of third-degree murder.

■ ¶ 10 To be convicted of kidnapping, the jury must have found that appellant "remove[d Mr. Irick] a substantial distance under the circumstances from where he is found, . . . with [the] intention[ ] . . . [t]o facilitate commission of any felony or flight thereafter [or to] inflict bodily injury on or to terrorize the victim or another." 18 Pa.C.S.A. § 2901(a). Again, appellant could be held liable as an accomplice; and, again, we believe that the evidence was sufficient for the jury to convict appellant.

¶ 11 In addition to the testimony of Mr. Brown and Mr. Riera noted above, they also testified that they left the Starlight and drove to the industrial lot. N.T. Trial, 9/12/02, at 450, 460, 514, 519. Neither witness gave an estimation of the drive's time or distance, but the jury could infer from the testimony that its purpose was to remove the victim to the lot for his execution. We believe that the jury was permit-ted to conclude that the drive was a "substantial distance under the circumstances." *See, e.g., Commonwealth v. Hughes,* 264 Pa.Super. 118, 399 A.2d 694, 696 (1979) ("Certainly, the guilt of an abductor cannot depend upon the fortuity of the distance he has transported his victim . . . ."). Therefore, we find that the conviction of kidnapping was supported by sufficient evidence.

## II.  *Weight of the Evidence*

■ ¶ 12 Appellant also asserts that his convictions were against the weight of the evidence. Our standard of review:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the jury's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Begley,* 566 Pa. 239, 780 A.2d 605, 619 (2001) (citations omitted). Appellant asserts that the testimony of Mr. Brown and Mr. Riera was inherently unreliable because they are convicted felons, one in prison and the other on parole, and that the Commonwealth agreed not to prosecute them for the murder of Mr. Irick if they testified against appellant. He further asserts that their testimony was contradictory.

¶ 13 Taking, for the sake of argument, everything appellant states about the witnesses and their credibility to be true, their testimony sustains the convictions of third-degree murder and kidnapping. Further, the extensive nature of the witnesses' criminal background was revealed to the jury. It was the jury's—and only the jury's—responsibility to assess their credibility. *Commonwealth v. Riley,* 811

A.2d 610, 614 (Pa.Super.2002). In this case, the jury believed that appellant was guilty of third-degree murder and kidnapping. We have reviewed the record for ourselves, and our sense of justice is not shocked by the verdict.

### III. *Admission of Evidence*

■ ¶ 14 Appellant argues that the lower court erred when it denied his pre-trial motion to exclude evidence of his drug dealing activities. He argues that the evidence was inadmissible as evidence of prior bad acts. *See* Pa.R.E. 404(b). Further, he states, even if it was admissible under Rule 404 to demonstrate motive, its prejudicial effect still outweighed its probative value, making it inadmissible. *See* Pa.R.E. 403.

¶ 15 Unfortunately, appellant does not show us in the record where this evidence was heard by the jury. If the jury never heard the disputed evidence, he could not have been prejudiced by its admission. Appellant might be correct, but we will not scour the record to make an argument for him. This assignment is waived. Pa. R.A.P. 2119(a); *Commonwealth v. Irby,* 700 A.2d 463, 464 (Pa.Super.1997) ("[A]rguments which are not sufficiently developed are waived.").

### IV. *Jury Instructions on Penalties for Murder*

■ ¶ 16 Appellant assigns error to the trial judge for informing the jury as to the penalties for convictions of first- and third-

degree murder.[3] The Commonwealth argues that appellant waived this argument because he did not make a specific objection to it. Our review of the record shows that, rather than unspecific, appellant made no objection at all. Immediately upon completing his instructions to the jury, the trial judge asked counsel, "Are there any suggestions, additions or changes to the charges?" N.T. Trial, 9/13/01, at 647. Counsel for appellant stated, "No, Your Honor." *Id.* Counsel did not speak again before the jury retired to deliberate. In order to preserve this issue, appellant was required to make a timely, specific objection before the jury retired. *Commonwealth v. Klinger,* 369 Pa.Super. 526, 535 A.2d 1060, 1068 (1987). Since he did not, this assignment was waived.

### V. *Sentence In Excess of the Sentencing Guidelines*

¶ 17 Finally, appellant argues that his prison sentence is excessive and unreasonable because it is far above the sentencing guidelines. The judge did, in fact, impose a sentence equal to the maximum statutory penalties for the crimes, and also made them consecutive.[4] Appellant claims that the judge failed to make a record of the reasons for this departure, other than those factors already contemplated by the guidelines.

¶ 18 This assignment is a challenge to the sentencing discretion of the trial judge.

---

**3.** In addition to the crimes for which he was convicted, appellant was charged with first-degree murder, conspiracy to commit murder, and voluntary and involuntary manslaughter. N.T., Charge Sheets.

Rather than conspiracy to commit murder, the trial judge instructed the jury that the charge was conspiracy to commit first-degree murder. N.T. Trial, 9/13/01, at 641. This position was reflected in the verdict form.

However, in the face of the accomplice liability instruction, *see* Part I, this is an unimportant point.

**4.** 18 Pa.C.S.A. § 1102(d) (maximum sentence for third-degree murder is forty years); 18 Pa.C.S.A. § 2901(a) (kidnapping is felony of the first degree); 18 Pa.C.S.A. § 1103(1) (maximum sentence for felony in the first degree is twenty years).

*See, e.g., Commonwealth v. Rodriquez,* 449 Pa.Super. 319, 673 A.2d 962, 968 (1996). The rules of appellate procedure required appellant to "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa. R.A.P. 2119(f). He has complied with this rule, and it is our responsibility to first examine that statement to determine if we may address the trial court's sentence. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 621–622 (2002).

¶ 19 We may address the discretionary aspects of appellant's sentence only if "it appears that there is a substantial question that the sentence imposed is not appropriate under [the criminal code]." 42 Pa.C.S.A. § 9781(b). The Commonwealth contends that appellant did not to raise a substantial question because he claims that the "sentencing court failed to state reasons on the record to justify an upward departure from the guidelines." Appellee's brief at 18. Indeed, that is the center of appellant's claim. We disagree with the Commonwealth that this does not raise a substantial question, because the court below was required to "make as a part of the record, ... in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b). Since appellant claims that the court below did not state "sufficient reasons" for the upward departure, appellant's brief at 24, we find that he has raised a substantial question.

¶ 20 Our standard of review of appellant's sentence is whether it is "unreasonable," and if so, we must vacate it. 42 Pa.C.S.A. § 9781(c)(3).

¶ 21 At sentencing, the court stated that it considered a pre-sentence investigation report, appellant's past criminal record, and the guidelines. It gave a detailed description of appellant's background, as reported by the pre-sentence investigation. Turning to the murder conviction, the court stated:

> We don't find any mitigated circumstances, and we believe that it's necessary to deviate from the guidelines because of the serious nature of this particular offense, the manner in which it was committed, the fact that [appellant] had time to cool off and rethink his actions, he had the opportunity to abandon this venture, he had the opportunity to seek help for Mr. Irick, and none of these things were done.

> We believe that those actions on the basis of [appellant] would indicate to the Court that he would be a poor candidate for rehabilitation and would in all likelihood be a danger to society as well, and for those reasons we would sentence [appellant] above the aggravated range and give him the maximum sentence of 20 to 40 years in the state prison.

N.T. Sentencing, 10/24/01, at 9–10. As for the kidnapping conviction:

> [A]nd, again, in this particular matter it's clear to the Court that the third-degree murder could not have occurred as easily had it not been for the kidnapping of Mr. Irick. And the purpose of the kidnapping was so that the third-degree murder could indeed be accomplished, and essentially by participating in this kidnapping, this particular [appellant] chose the time and place of Mr. Irick's death.

> It was clear from the testimony that it was this [appellant's] suggestion that they drive out of town to the deserted ... address where they could do what they wanted to with Mr. Irick, as opposed to dealing with him in the parking lot area of the Starlight apartment building. There was an indication in the

trial that [Mr. Malloy] wanted to shoot Mr. Irick at the Starlight and [appellant] essentially said no not at that point.

But rather drove Mr. Irick to a spot where it could be more easily accomplished and which would allow these individuals to escape the consequences, ... and we believe that that shows a criminal intent, a mind used for criminal purposes, which we believe, again, makes him a poor candidate for rehabilitation.

We can also hardly understand or barely fathom the sheer terror that Mr. Irick would have felt as he rode from the Starlight apartment complex to his ultimate place of death, essentially knowing that he was heading for an execution, which was clear by his actions before he exited that particular vehicle.

[Appellant] was more than a casual participant in this particular group. Again, he essentially led the group from the Starlight apartment complex out to the isolated lot where this execution took place, and, again, based on those factors we believe this crime is much more serious than usual and that [appellant] will be a poor candidate for rehabilitation, and that he will be a danger to society.

*Id.* at 10–11. For the same reason that we believe that appellant raised a substantial question, we believe that the court below satisfied its duties to make a record of the reasons for the sentence imposed. The court made an ample record, and, in light of that record, we do not agree with appellant that the court's sentence as to either charge was so unreasonable as to warrant vacation.

¶ 22 Judgment of sentence AFFIRMED.

¶ 23 Concurring Opinion by GRACI, J.

CONCURRING OPINION BY GRACI, J.

¶ 1 I join in the opinion of the majority except for its analysis of Appellant's challenge to the weight of the evidence. While I agree with the majority that this claim must be rejected, I arrive at that conclusion via a different route.

¶ 2 As the majority suggests, "[a] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997) (citation omitted). Stated another way, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied*, 540 Pa. 597, 655 A.2d 986 (1994) (citation omitted). Our Supreme Court has clearly said that it is the trial court's sense of justice that must be shocked before a new trial may be granted on a claim that the verdict is against the weight of the evidence. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1191 (1994). It is irrelevant that our sense of justice may be shocked. That is the import of the Supreme Court's directive that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 753 (2000) (citing *Brown*, 648 A.2d at 1189).[5]

---

**5.** The majority cites *Commonwealth v. Begley*, 566 Pa. 239, 780 A.2d 605 (2001) for the applicable standard of review. Although the

*Begley* court endeavored to review the record in order to determine whether the jury's verdict "was so contrary to the evidence as to

¶ 3 Accordingly, I would review the record in this case only for the limited purpose of determining whether the trial court abused its discretion in denying Appellant relief on his weight claim. To undertake an independent review of the evidence for the purpose of determining whether *our* sense of justice is shocked by the verdict below is beyond this Court's narrowly circumscribed scope and standard of review.

¶ 4 In its Rule 1925(a) opinion, the trial court, in rejecting Appellant's weight challenges, stated unequivocally that

> there was no doubt that the victim, Arthur Irick, was removed from the area of safety by these four co-conspirators to a deserted area of the City where he could be killed. We believe the evidence at trial showed that Mr. Gooding picked the place where Mr. Irick should be killed as he drove the lead vehicle to the deserted parking lot where Mr. Irick was shot. We believe the evidence at trial showed that Mr. Gooding did this to facilitate the killing and therefore met the requirements of third degree murder as well as the kidnap[p]ing statute.

1925(a) Opinion, 1/8/02, at 7–8. During Appellant's sentencing hearing, the trial court also set forth a lengthy and detailed recitation of the evidence pertaining to the viciousness of the crime and the fact that Appellant was a very active participant in the ruthless execution of the victim. *See* N.T. Sentence, 10/24/01, at 9–11. This is reflected, too, in the trial court's opinion. 1925(a) Opinion, 1/8/02, at 4–7. Clearly, the trial court's conscience or sense of justice was not shocked so as to require a

new trial. Although an express statement to that effect in the trial court's 1925(a) opinion or the order denying the post-sentence motion would have been helpful to our review, the trial court committed no abuse of discretion and properly denied Appellant relief on his weight of the evidence challenge.

¶ 5 Accordingly, I agree that the judgment of sentence should be affirmed.

shock one's sense of justice," *id.* at 620, I believe the Court did so because *Begley* was a capital case on direct appeal to the Supreme Court pursuant to 42 Pa.C.S.A. § 9711(h). *See Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728, 733 n. 3 (1987) ("It is a rule of this Commonwealth that an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the 'cold record.' However, where the penalty of death is imposed we will consider such a complaint.") (citations omitted).