**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BRIAN HOPERSBERGER | : | |
| | : | |
| Appellant | : | No. 1027 MDA 2020 |

Appeal from the Judgment of Sentence Entered May 11, 2020,
in the Court of Common Pleas of Luzerne County,
Criminal Division at No(s): CP-40-CR-0004572-2015.

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: OCTOBER 8, 2021**

Brian Hopersberger appeals from the judgment of sentence of 20 to 40 years' incarceration. A jury convicted him of possessing over 100 digital files of child pornography, distributing three of those files to police, and using his home computer to do so.[1] We affirm.

On July 11, 2015, through law-enforcement-specific, BitTorrent software,[2] investigators identified child pornography being made publicly available from someone's Internet-ready device. Officers identified a specific IP address as the source of this child pornography. The investigators

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 6312(c), 6312(d), and 7512(a).

[2] This software is a peer-to-peer, file-sharing program that exchanges digital data between users across the globe. Unlike public, BitTorrent programs, which download piecemeal data from various users simultaneously, the law-enforcement-specific, BitTorrent program downloads entire files from one computer at a time.

downloaded three videos of child pornography from the target IP address: hence, the three counts of dissemination.

A few weeks later, in furtherance of their investigation, officers executed a search warrant for Hopersberger's Luzerne County home. He was not there at the time, but his brother, Philip Hopersberger, was. Philip informed the officers that he lived with Hopersberger, they had separate bedrooms, the computer in Hopersberger's bedroom belonged to Hopersberger, and he (*i.e.*, Philip) "doesn't even know how to use a computer." N.T., 2/12,20, at 191. The lead investigator believed Philip and eliminated him as suspect. ***See id.***

Within Hopersberger's bedroom, police found a computer wired directly to the modem. They also discovered a thumb drive on the desk next to the computer tower. The agents seized the tower and thumb drive.

The preliminary evaluation of the computer tower located 116 thumbnail images of child pornography under the computer's username "John." ***Id.*** at 49, 55. "John" was the only username on the computer. The examination also located a tax document listed as Brian D. Hopersberger in the same folder as some of the pornography. The computer had the BitLord, peer-to-peer, file-sharing program, with an installation date of December 14, 2014. ***Id.*** at 49. This software was compatible with the BitTorrent software that law enforcement had previously used to download the three videos of child pornography.

Evaluation of the computer's "recycle bin" disclosed a folder listed "LS" which contained 15 movies of child pornography. These files had been moved

to the recycle bin on May 16, 2015. Furthermore, the investigation revealed 110 thumbnails of child pornography, of which 106 were notably "child erotica." *Id.* at 145-47.

Significantly, a computer-forensic expert also evaluated the computer's Internet activity and observed a history reflecting the use of the BitTorrent website and BitTorrent files indicative of child pornography. The expert explained that the user of the computer had searched on various days of the week, at all hours of the day, and that the searches used child-pornography terms. One of the terms, "Cbaby," stood out, because it was in the name of one of the files the police downloaded on July 11, 2015. *Id.* at 162-63.

The expert's analysis also demonstrated that only Hopersberger had ever used the computer for e-mails and Facebook from July through August of 2015. *Id.* at 165-66. The username "BrianHops71@gmail" was used, which listed a phone number and address and an access time of June 2, 2015. *Id.* at 166. The address associated with that account was Hopersberger's residence.

Based upon all of the foregoing and other evidence of record, the expert opined as follows:

> [G]oing through the Internet analysis, I didn't see evidence of anyone else, besides [Hopersberger using the computer], and I noted prolonged use of [his] e-mail account and his Facebook account . . . there was prolonged searches of child pornography over the course of months, days, and weeks at various times. There was nothing that would have indicated that anyone else had been using this computer system.

Furthermore, based on the location of this computer, which was in Brian Hopersberger's room, plugged into the wall, if someone else were to have been using this computer system, they would have had to have been in his room at various times, various days, weeks, and months. It's just not reasonable.

*Id.* at 168-69.

Crediting the expert and the rest of the Commonwealth's evidence, the jury convicted Hopersberger on all counts, and the trial court sentenced him as described above. This timely appeal followed.

Hopersberger raises one appellate issue: "Did the Commonwealth fail to establish, beyond a reasonable doubt, that [he] disseminate, downloaded, and/or possessed child pornography in violation of [the relevant statutes]?" Hopersberger's Brief at 4.

In Hopersberger's view, the Commonwealth failed to identify him as the individual who possessed and distributed child pornography from his bedroom computer. He offers various contentions in an attempt to undermine the Commonwealth's evidence, predominately based on his testimony during the defense's case-in-chief. *See id.* at 17 (Hopersberger indicating that (1) the name on the IP address and the phone number was similar to and/or associated with his son; (2) that his son moved out in the winter of 2015; and (3) that he resided in the home, not only with Philip, but also with Diane Krasinksi and, for a time, his son, also named Brian Hopersberger).

However, by relying upon his own, self-serving testimony, Hopersberger ignores our scope of review for this issue. For a sufficiency-of-the-evidence

- 4 -

claim, "our standard of review is *de novo*; however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420–21 (Pa. 2014). Hopersberger would have us credit only his testimony and view it in in the light most favorable to himself. This we may not do. ***See id.***

Instead, as Hopersberger conceded, the jury, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." Hopersberger's Brief at 14 (quoting ***Commonwealth v. Gooding***, 818 A.2d 546, 549 (Pa. Super. 2003)). Here, the jury refused to credit Hopersberger's rendition of events. Thus, neither he nor this Court may rely upon his testimony to challenge the sufficiency of the Commonwealth's case-in-chief.

Turning to the evidence therein, we find sufficient proof to sustain the 110 crimes for which Hopersberger stands convicted.

First, in Pennsylvania, it is a crime when someone "knowingly . . . distributes . . . to others, any . . . computer depiction . . . depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act." 18 Pa.C.S.A. § 6312(c). It is also a crime if one "intentionally views or knowingly possesses or controls any . . . photograph, film, videotape, computer depiction . . . depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act . . . ." 18 Pa.C.S.A. § 6312(d).

Additionally, a person may not use "a communication facility to commit . . . any crime which constitutes a felony under this title." 18 Pa.C.S.A. § 7512(a). A "communication facility" is an "instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted, in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic, or photo-optical systems or the mail." 18 Pa.C.S.A. § 7512(c). Thus, an Internet-ready device, such as Hopersberger's home computer, is a "communication facility."

Limiting our review, as we must, to the evidence most favorable to the Commonwealth, we accept that the 100+ digital files at bar were child pornography, and they were on the computer and/or in the jump drive recovered from Hopersberger's bedroom. The forensic-computer expert reviewed the metadata from those seized devices and pinpointed file creation times and Internet searches for child pornography. These occurred continuously during Hopersberger's nearly year-long ownership of the computer; they occurred at all hours of the day and night, on weekdays and weekends.

As noted above, the expert testified that "based on the location of this computer, which was in Brian Hopersberger's room, plugged into the wall, if someone else were to have been using this computer system, they would have had to have been in his room at various times, various days, weeks, and months." N.T., 2/12/20, at 168-69. Thus, the expert anticipated Hopersberger's alibi --that someone snuck into his bedroom, and that person

repeatedly downloaded, viewed, and disseminated child pornography on and from Hopersberger's desktop computer and on his jump drive, without his knowledge. The expert dismissed this alibi as unreasonable.

This expert opinion, which the jury could accept at face value, was, alone, sufficient evidence to conclude that Hopersberger knew exactly what materials were on his computer and jump drive, because he put them there. Indeed, it would strain credulity to think that anyone other than Hopersberger would have the around-the-clock, unlimited access to the computer and jump drive in Hopersberger's bedroom. The random dates and times at which the user accessed child pornography on the bedroom computer and the repetitiveness of that access are strong circumstantial evidence leading to the reasonable inference that Hopersberger, in fact, was the person who knowingly downloaded, viewed, and disseminated more than 100 files of child pornography.

All remaining arguments to the contrary in Hopersberger's Brief, which we need not reiterate here, go to the weight of the Commonwealth's evidence, not to its sufficiency. **See** Hopersberger's Brief at 17-19. "We will not now weigh the evidence and substitute our judgment for that of the jury." **Commonwealth v. Blystone**, 617 A.2d 778, 780 (Pa. Super. 1992). It was the jury's prerogative to resolve the weight of the evidence. The jury did so in favor of the Commonwealth.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/08/2021