J. S03003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                      :          PENNSYLVANIA
           v.           :
                      :
NICHOLAS ROLL,             :       No. 1945 EDA 2013
                      :
         Appellant    :

Appeal from the Judgment of Sentence, October 26, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009671-2010

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED FEBRUARY 13, 2015**

Appellant, Nicholas Roll, appeals ***nunc pro tunc*** from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. Following a jury trial, appellant was found guilty of third degree murder, 18 Pa.C.S.A. § 2502(c), and two violations of the Uniform Firearms Act ("VUFA"), 18 Pa.C.S.A. §§ 6106 and 6108. On October 26, 2012, appellant was sentenced to an aggregate term of incarceration of 25 to 50 years. We affirm.

The facts of this case are as follows. On May 2, 2010, Deborah Michelle Adams was working the door at the Top Cat Club, a lounge owned by her brother, John Adams ("Adams"), on the 5000 block of North Fifth Street in Philadelphia. On the night in question, Ms. Adams was collecting money at the door for a comedy show that was taking place at the

club. (Notes of testimony, 6/8/12 at 6-7.) She testified that while she was collecting money, her brother went outside to walk a barmaid to her car. (*Id.* at 7.) Ms. Adams was ready to go to the front of the bar when Pamela White came in and said, "[Adams] got shot." (*Id.* at 8.) Ms. Adams ran outside and waited with her brother for the police and an ambulance to arrive. (*Id.* at 8-9.)

Yolanda Bowen, a patron at the club, testified she went outside to smoke a cigarette and saw appellant and Brent Dixon in the doorway. (*Id.* at 17-18.) At one point, she heard Adams ask the two to move away. (*Id.* at 18.) She testified that appellant and Dixon asked her what was going on inside, and she told them there was a show. (*Id.* at 19.) They asked her how much it was to get in and she replied, $20. (*Id.*) According to Bowen, they did not go in. (*Id.*)

Pamela White testified she was present at the shooting. She testified she saw Adams walking a woman to her car. She heard a shot. She turned and heard Adams say, "I don't have no [sic] money. I told you I don't have no [sic] money." (*Id.* at 53.) She turned around again and saw a male wearing a baseball cap fire another shot. (*Id.*) She did not see his face. (*Id.*) According to White, she ran one way and the shooter ran another way. (*Id.*)

Christian Patrick, a relative of Dixon, was present during the shooting. When called to testify at the trial, Patrick claimed he could not remember

anything about the shooting. A signed statement he made nine days after the shooting was read into the record. In that statement, Patrick said he saw the shooter, appellant, whom he knew as "Pooch," call Dixon over and say to him, "The bull is in the bar right now." (***Id.*** at 154.) Pooch and Dixon then walked towards the bar. (***Id.***) Patrick saw Adams outside the bar, and Pooch started talking to Adams. (***Id.*** at 156.) Dixon came over and the three stood forming a triangle. (***Id.***) Pooch grabbed Adams' pocket, and Adams pushed him away. (***Id.*** at 156-157.) According to Patrick's statement, Pooch raised a gun and fired at Adams. (***Id.*** at 157.) Adams started falling and Pooch fired again. (***Id.***) After the second shot, Patrick stated, "I was out of there." (***Id.***)

Detective Thorsten Lucke testified that he obtained a surveillance video of the shooting taken from a video camera positioned at a nearby grocery store located at 5008 North Fifth Street. The video was played for the jury in real time and in slow motion. Both appellant and Dixon stipulated that the images seen on the video were of Adams and them. (***Id.*** at 63-68.)

Dr. Marlon Osbourne, an assistant medical examiner, testified that Adams received two gunshot wounds. One bullet went through his left arm into his chest. (Notes of testimony, 6/7/12 at 65-66.) The second bullet, which Dr. Osbourne testified was lethal, entered the left side of Adams' abdomen and penetrated both the small and large intestines. (***Id.*** at 66,

68.) Emergency surgery was performed to remove Adams' bowel. (*Id.* at 64.) Subsequently, Adams developed an infection that was uncontrollable. (*Id.*) His kidneys failed; he went into cardiac arrest several times and eventually died on May 10, 2012, approximately one week after the shooting. (*Id.* at 62, 64.)

When appellant was arrested on May 25, 2010, he was in possession of a .45 caliber handgun loaded with nine rounds. (Notes of testimony, 6/8/12 at 180-182.) Police Officer Jesus Cruz, a ballistics expert, testified that he examined the gun recovered from appellant, along with the fired cartridge casings recovered from the crime scene and the bullets recovered from Adams. He determined the gun recovered from appellant was the murder weapon. (Notes of testimony, 6/11/12 at 36.)

Appellant testified at trial and admitted to shooting Adams, but denied his motive was robbery. (*Id.* at 156.) He testified he bumped into Adams on the street several days earlier and they exchanged words. (*Id.* at 161.) On the night of the shooting, appellant claimed he shot Adams when Adams was "fidgeting as if he had a weapon under his shirt." (*Id.* at 172.) According to appellant, Adams' allegedly threatening action took place out of the view of the surveillance camera. (*Id.*) Appellant claimed that after first shooting Adams in the stomach, he searched Adams' waistband looking for a gun. (*Id.* at 178-180.) Appellant further testified that he believed Adams was still capable of harming him, so he shot him again in the arm and fled.

(*Id.* at 182.)   On cross-examination, appellant admitted Adams was unarmed.  (*Id.* at 206-207.)

On June 12, 2012, the jury convicted appellant of third degree murder, possessing a firearm not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.  Appellant was sentenced to an aggregate term of incarceration of 25 to 50 years.  Timely post-sentence motions were filed and denied.  No direct appeal was filed.  Subsequently, a timely petition for post-conviction relief was filed seeking reinstatement of appellant's direct appeal rights.  The petition was granted, and the instant appeal *nunc pro tunc* followed.  Appellant complied with the trial court's order to file a Rule 1925(b) statement of errors complained of appeal.[1]

Appellant first argues the evidence was not sufficient to sustain his conviction for third degree murder.  Specifically, appellant contends the Commonwealth failed to prove he acted with malice.

Prior to addressing this issue, we will recite our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we

---

[1] Appellant raised four issues in his Pa.R.A.P. 1925(b) statement that were addressed by the trial court.  On appeal, appellant raises only two of those claims.  Thus, the other issues have been abandoned on appeal.

note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa.Super. 2008), *appeal denied*, 980 A.2d 606 (Pa. 2009), quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Tielsch*, 934 A.2d 81, 94 (Pa.Super. 2007), *appeal denied*, 952 A.2d 677 (Pa. 2008), *cert. denied*, 555 U.S. 1072 (2008) (citation omitted). "Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Hardy*, 918 A.2d 766, 774 (Pa.Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v.*

***Gooding***, 818 A.2d 546, 550 (Pa.Super. 2003), ***appeal denied***, 835 A.2d 709 (Pa. 2003).

Appellant contends the Commonwealth did not demonstrate malice as this was a situation where appellant "took care as to where to shoot [Adams]." (Appellant's brief at 8.) Appellant contends he is entitled to an arrest of judgment because he did not shoot Adams in the head or in the chest. (***Id.***)

There is no doubt in this matter that the Commonwealth proved appellant killed the victim with malice. In ***Commonwealth v. Briggs***, 12 A.3d 291 (Pa. 2011), appellant shot two deputies. One of the deputies was shot at close range in the chest and abdomen. In discussing whether appellant shot the deputy with the intent to kill with malice, our supreme court opined, "The chest and abdomen house the human body's chief circulatory and digestive organs, as well as a network of vital arteries and veins which supply them and, thus, are vital areas of the body." ***Id.*** at 307. Instantly, when viewed in the light most favorable to the Commonwealth, the evidence demonstrates that appellant shot Adams through the left side of his abdomen, a vital part of the body, with a deadly weapon; such is sufficient to permit an inference of malice necessary for murder in the third degree.

Next, appellant challenges the weight of the evidence. Specifically, appellant argues he should be awarded a new trial because the evidence

only established that appellant was in some fear and acted out of fear and not out of malice. (Appellant's brief at 9.)

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis removed) (citations omitted).

Appellant essentially reasserts his sufficiency of the evidence claim. He contends that his testimony reflects he was not "mean-spirited or ill-willed on the night in question but simply trying to get away from an individual who he perceived as meaning him harm." (Appellant's brief at 9.) Appellant further contends that even if he was wrong that Adams meant him harm, that does not prove he acted with malice. (*Id.* at 9-10.)

Obviously, the jury rejected appellant's claim that he feared Adams was going to harm him. The jury heard testimony that Adams stated that he did not have any money and saw a video of the shooting. The guilty verdict was consistent with the evidence. Accordingly, the trial court did not abuse its discretion in denying appellant's post-sentence motion for a new trial based on the weight of the evidence. Appellant is not entitled to relief.

The judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/13/2015