J-S43010-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRYSTAL MARIE BELLE | : | |
| | : | |
| Appellant | : | No. 158 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 6, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004218-2016

BEFORE:  SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                    FILED JANUARY 21, 2021

Appellant, Crystal Marie Belle, appeals from the judgment of sentence entered on January 6, 2020, in the Westmoreland County Court of Common Pleas.  After review, we affirm.

The trial court summarized the relevant facts and procedural history in this matter as follows:

> The charges in this case arose out of an investigation of the death of nineteen-year-old Khalil Parker (hereinafter "Parker") on June 11, 2016 in Jeanette, Westmoreland County.  The evidence presented at trial established that on the date of the incident, at 2:24 p.m., first responders were dispatched to 14 South 7th Street in Jeannette for an unresponsive male possibly suffering from cardiac arrest. (Trial Transcript (hereinafter "TT") 10/2-10/19 at 93).  Joseph Sapp, who is employed as a nurse practitioner and a volunteer for Jeannette EMS, testified that upon arrival on scene, he observed Parker unresponsive, lying on the kitchen floor with his pants down around his ankles and [Appellant] performing CPR on him. (TT at 89-95).  According to Mr. Sapp, [Appellant] informed him that Parker was involved in an altercation earlier that day and was dropped off by friends and

then collapsed on the floor. (TT at 98, 105). Mr. Sapp testified that upon inspection, he observed numerous small pieces of skin missing from Parker's entire body without the presence of blood. (TT at 96-102). Additionally, his testimony revealed that Parker's body was cold, and his pupils were fixed and dilated indicating that his brain had been without oxygen for an extended period of time. (TT at 101). Parker was transported to Westmoreland Hospital where he was later pronounced dead. (TT at 99, 103).

Officer Frank Balistreri, of the City of Jeannette Police Department, testified that upon arrival on scene, he observed Parker lying on his back in the kitchen without any clothes on. (TT at 113-116). Officer Balistreri indicated that Parker had a laceration above his left eye and abrasions on his body that appeared to be "wiped off". (TT at 116, 121). According to Officer Balistreri, [Appellant], who made the initial 9-1-1 call requesting assistance, indicated that Parker left the residence at 5:00 a.m. and came home at 1:00 p.m. before falling to the floor. (TT at 116-119). Officer Balistreri testified that [Appellant] informed him that Parker had issues with other males from Wilkinsburg and had been beaten up the week prior in which he received treatment for a head injury; however, Officer Balistreri was not provided with the names of any assailants. (TT at 118-119). After talking with [Appellant], Officer Balistreri reviewed the department logs and determined that no assaults had been reported during June of 2016, nor was there any evidence of a fight in the surrounding area of [Appellant's] residence. (TT at 120-121). Officer Balistreri indicated that he secured the residence and attempted to call [Appellant's] cell phone several times after she failed to appear at the hospital; however, the calls went unanswered, and a BOLO [("be on the lookout")] was issued for [Appellant] at 8:49 p.m. that evening. (TT at 125-126, 130-132).

Detective Ray Dupilka, of the Westmoreland County District Attorney's Office, testified that he also attempted to periodically call [Appellant] without answer. (TT at 740). Detective Dupilka indicated that he secured a search warrant for [Appellant's] residence on June 11, 2016, and requested a criminal complaint be issued against her on July 1, 2016. (TT at 741-742). According to Detective Dupilka, [Appellant] called him on July 14, 2016, and turned herself in. (TT at 743-744).

Lance Clemons testified that on the date of the incident, [Appellant] contacted him and told him that she and Parker got

into a fight and she didn't "think [Parker would] make it." (TT at 171-175). According to Mr. Clemons, [Appellant] indicated that Parker was throwing her around, and she hit him with a broken shovel, (TT at 175).

Officer Thomas Yaniszeski, of the City of Jeannette Police Department, testified that on May 17, 2016, he was dispatched to the South 7th Street apartments for reports of a black female and black male fighting in the street. (TT at 645-651). [Appellant's] neighbors, Robert Veitch and Mark Andrew Taylor, testified that they heard [Appellant] and Parker arguing a lot. (TT at 662, 677).

Vernessa Kershaw, who had known Parker through his grandmother Barbara Morris, testified that she last saw Parker at [a] funeral in May of 2016. (TT at 682-685). Ms. Kershaw described Parker as "distant" and indicated that when she was talking with Parker, [Appellant] came over to them, told Ms. Kershaw to stay away from [Parker], and called her a "bitch". (TT at 685-689). Parker's mother, Candice [("Ms. Parker")], testified that during the funeral, Parker seemed "more withdrawn", and she observed blood on Parker's shirt and scratches and white marks on his skin. (TT at 710-722). According to Ms. Parker, [Appellant] indicated that [Appellant and Parker] had a disagreement, and "it will never happen again". (TT at 723).

Retired Westmoreland County Detective Hugh Shearer testified that he examined the entirety of [Appellant's] residence and collected evidence of red staining on the walls, fixtures, floor, furniture, clothing, bedding, and objects, including a broken shovel handle, which tested presumptively positive for blood. (TT at 184-418). Through his examination, Detective Shearer detected wet towels in the basement and what he believed to be diluted blood and wipe patterns on the walls in the kitchen, as well as a palm print on the back of the kitchen wall that was attributed to [Appellant]. (TT at 223-224, 390-391). Detective Shearer testified that after reviewing the autopsy photographs of the decedent, he made a scaled overlay of a picture of the broken grip of the shovel handle and the ragged laceration on Parker's left orbital bone. (TT at 405-414).

Ashlee Mangan, who is employed as a forensic scientist with the Pennsylvania State Police Bureau of Forensic Services, testified that through her examination, she determined that there

was blood present on the items submitted by Detective Shearer and she collected swabs and prepared them for DNA analysis. (TT at 486-509). Sara Harner, who is employed as a forensic DNA scientist for the Commonwealth of Pennsylvania, testified that the known reference sample from Parker matched the DNA profile obtained from the swabs of blood prepared by Ms. Mangan from the end of a wood board, the damaged handle and grip of the shovel shaft, a metal portion and jaws of a pair of pliers, a T-shirt with blood in the kitchen garbage bag, and a table top in the master bedroom. (TT at 593-606, 614). Ms. Harner testified that the swabs from the grips of the pliers were consistent with a mixture of two people, the major component matching the known reference sample for [Appellant]. (TT at 608).

Forensic Pathologist Dr. Cyril Wecht testified that he conducted an autopsy of the decedent and observed over a hundred acute, subacute, and chronic injuries to [Parker's] body; however, aside from a minimally enlarged heart, Parker was "a perfectly healthy 19-year-old." (TT at 524-532, 557-561). Dr. Wecht testified that he also detected a subscapular hematoma on the left side of the decedent's scalp, and cerebral edema was present. (TT at 557-558). Dr. Wecht confirmed that the broken shaft of the shovel, that was located in the residence, could have caused the injury to the left of the decedent's eye. (TT at 556). Based upon his autopsy examination and a review of the Commonwealth's exhibits of photographs of blood deposits in the residence, Dr. Wecht opined that with a reasonable degree of medical certainty, Parker's death was attributed to hypovolemia, which is the diminished body fluids as a result of exsanguination due to multiple injuries. (TT at 560-561). To the contrary, Defense expert witness, Forensic Pathologist Lindsey Thomas opined that she did not believe that Parker's death was caused by his injuries; however, she was unable to determine the cause of his death. (TT at 857-884).

Julie Thomas testified that in August of 2018 and May of 2019, she was an inmate at the Westmoreland County Prison with [Appellant]. (TT at 776). According to Ms. Thomas, [Appellant] informed her that she began fighting with her boyfriend, struck him with a shovel, and tried to "clean it up" after learning that he was cheating on her. (TT at 776-781).

[Appellant] also elected to testify in her own defense. [Appellant] testified that in early 2015, she met Parker in

Wilkinsburg through mutual friends when she was thirty-five years old and Parker was in high school. (TT at 921-925, 993-994). [Appellant] testified that in March of 2016, when Parker was nineteen years old, they began to engage in a sexual relationship which was "not normal" to her, involving tying each other up with shoelaces and spanking each other. (TT at 921-927, 994-995). [Appellant] confirmed that a week prior to Parker's death, they went to West Penn Hospital to seek treatment for an open head injury that Parker sustained after being beat[en] up in Wilkinsburg, and at that time, he provided the name "Dom Wilkins" because he did not want anyone to know he was there. (TT at 931-937). [Appellant] testified that the wound was profusely bleeding, and they used towels and T-shirts to soak up the blood before going to the hospital. (TT at 933). [Appellant] indicated that the night before Parker's death, she became angry after [Parker] inserted what appeared to be [the handle of a shovel] in her rectum, and she threw the shovel [handle] at him. (TT at 947-951). [Appellant] testified they then began arguing and physically fighting. (TT at 951-960). Specifically, during the encounter, [Appellant] indicated that Parker kept trying to grab her so she cut him a couple of times with scissors and pliers, but eventually they stopped and went to sleep. (TT at 953-960).

According to [Appellant], Parker was not present when she woke up the following morning; however, he arrived back at the apartment a couple of hours later with his shirt on his head to stop it from bleeding again. (TT at 960-965). [Appellant] indicated that they began arguing again, and eventually Parker stated that he did not feel well, he started to convulse, and then he slid to the floor. (TT at 965-968). [Appellant] testified that she tried to move Parker to take him to the hospital, but she was unable to do so and decided to call 9-1-1. (TT at 970-971). As Parker was being transported to the hospital, [Appellant] indicated th[at] she initially followed the ambulance with her vehicle; however, she panicked and drove to Mr. Clemon's house instead. (TT at 976-977). [Appellant] denied both killing Parker and confessing the murder to Ms. Thomas. (TT at 985).

## PROCEDURAL HISTORY

As a result of the investigation, [Appellant] was arrested and charged with Murder of the First Degree, in violation of 18 Pa.C.S.A. § 2502(a); Murder of the Third Degree, in violation of 18 Pa.C.S.A. § 2502(c); Unlawful Restraint/Serious Bodily Injury,

in violation of 18 Pa.C.S.A. § 2902(a)(1); and Tampering with/Fabricating Physical Evidence, in violation of 18 Pa.C.S.A. § 4910(1). On October 2-10, 2019, [Appellant] proceeded to a jury trial before this [c]ourt. Following deliberations, the jury found [Appellant] guilty of Murder of the Third Degree and Tampering With or Fabricating Physical Evidence. [Appellant] was found not guilty of the remaining counts. Sentencing was deferred pending a Pre-Sentence Investigation. On January 6, 2020, [Appellant] was sentenced to a term of fifteen (15) to thirty (30) years [of] incarceration with two (2) years concurrent probation. Attorney Brian Aston represented [Appellant] at trial and during sentencing.

Trial Court Pa.R.A.P. 1925(a) Opinion, 4/14/20, at 1-7.

On January 28, 2020, Appellant filed a timely appeal, and on February 4, 2020, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed her Pa.R.A.P. 1925(b) statement on February 25, 2020, in which she raised the following issue:

1. The jury erred in determining the Commonwealth presented sufficient evidence to find [Appellant] guilty of Murder in the Third Degree and Tampering with Physical Evidence.

Pa.R.A.P. 1925(b) Statement, 2/25/20, at ¶1.[1]

Our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s].

_____

[1] In her brief, Appellant presented substantially the same issue: "Whether the jury's verdicts for Murder in the Third Degree and Tampering with Physical Evidence were based on sufficient evidence?" Appellant's Brief at 2.

In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

Commonwealth v. Estepp, 17 A.3d 939, 943-944 (Pa. Super. 2011).

Third degree murder is defined as an unlawful killing with malice but without the specific intent to kill. Commonwealth v. Dunphy, 20 A.3d 1215, 1219 (Pa. Super. 2011); 18 Pa.C.S. § 2502(c). Our Supreme Court has explained that "to convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that [Appellant] killed another person with malice aforethought." Commonwealth v. Santos, 876 A.2d 360, 363-364 (Pa. 2005). Malice is defined as:

A wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.... Malice may be found where [Appellant] consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.

Dunphy, 20 A.3d at 1219. (internal citations and quotation marks omitted). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body." Commonwealth v. Gooding, 818 A.2d 546, 550 (Pa. Super. 2003).

Tampering with or fabricating physical evidence is defined as follows: "A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation ...." 18 Pa.C.S. § 4910(1).

At the outset, we note that the Commonwealth contends Appellant waived her challenge to the sufficiency of the evidence due to the lack of specificity in her Pa.R.A.P. 1925(b) statement. Commonwealth's Brief at 5 (citing Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005); Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998); and Commonwealth v. Manley, 985 A.2d 256 (Pa. Super. 2009)). After review, we agree.

It is well settled that "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. [As a general rule, a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." Castillo, 888 A.2d at 780 (quoting Lord, 719 A.2d at 309). "If [an appellant] wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient." Manley, 985 A.2d at 262; see also Commonwealth v. Williams, 959 A.2d 1252, 1257-1258 (Pa. Super.

2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in Rule 1925(b) Statement the elements of particular crime not proven by the Commonwealth).

Herein, Appellant's claim challenging the sufficiency of the evidence fails to designate which element or elements of the crimes allegedly were not proven by the Commonwealth.[2] Consequently, Appellant waived her challenge to the sufficiency of the evidence. Manley, 985 A.2d at 262; Williams, 959 A.2d at 1258.

For the reasons set forth above, we conclude Appellant waived her sole issue on appeal.[3] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

[2] In her appellate brief, Appellant assails the Commonwealth's collection of evidence, and she asserts that the Commonwealth failed to prove: a link between the evidence collected at the crime scene and the crimes charged; Parker's death was a homicide; Appellant was the perpetrator; Appellant acted with malice; Parker's injuries were not due to the violent sex-life between Appellant and Parker; and bloody towels and shirts found in the home were used to cover up a crime as opposed to simply being evidence of Appellant cleaning up after her violent sex-life with Parker or cleaning up after Parker engaged in a physical altercation with a third party. Appellant's Brief at 13-18. However, none of these specific challenges was presented to the trial court, i.e., the trial court was left to guess at which elements of the crimes were allegedly not proven beyond a reasonable doubt.

[3] Assuming, arguendo, that Appellant had not waived her issue on appeal, we would affirm Appellant's judgment of sentence on the basis of the trial court's opinion. Although the trial court was not apprised of the specific bases for Appellant's challenge, the trial court aptly addressed the evidence and concluded that it was sufficient to prove the elements of third-degree murder and tampering with physical evidence beyond a reasonable doubt and sustain the jury's guilty verdict. Trial Court Opinion, 4/14/20, at 8-12.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2021