J-S22027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTWAN LEON RICHARDSON :
:
Appellant : No. 825 MDA 2020

Appeal from the Judgment of Sentence Entered March 10, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000473-2018

BEFORE:   PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:         **FILED: DECEMBER 23, 2021**

Antwan Leon Richardson (Appellant) appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury conviction of kidnapping and false imprisonment.[1]  On appeal, he asserts: (1) the trial court erred in denying his Pa.R.Crim.P. 600 pretrial motion for nominal bail; (2) the court improperly found there was sufficient evidence to sustain his kidnapping conviction; (3) the court erred in denying his motion for a mistrial after the court referred to the victim as having been kidnapped; and (4) the court imposed an illegal sentence.  For the reasons below, we affirm.

I.  FACTS & PROCEDURAL HISTORY

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2901(a)(3), 2903(a).

The facts underlying Appellant's convictions, as presented during his jury trial, were aptly summarized by the trial court as follows:

On December 5, 2017, just before midnight, [Swatara Township Police] Officer Justin Anderson received a report of an assault and responded to the scene at Apartment 1003 on Chestnut Pointe. Officer Anderson immediately made contact with the victim, Amanda Mora, or Azarria Simon.[5] Ms. Simon stated to Officer Anderson that she had been kidnapped, taken, tied and put into a car. Ms. Simon was able to point out the car that was parked just a few spaces down from Officer Anderson's patrol vehicle. Ms. Simon told Officer Anderson that two African American males had done this to her and that she knew one by the name of "Fetty." Officer Anderson took note of the license plate and ran it through the PennDOT system. It was determined that Appellant . . . owned the vehicle.

_____

[5] Amanda Mora is the name the victim gave Officer Anderson. It was later determined that her real name is Azarria Simon. Azarria Simon, or Ms. Simon, will be used to refer to the victim hereinafter.

_____

Ms. Simon was further able to tell Officer Anderson that she had been in the trunk of this vehicle for many hours. Officer Anderson noted that Ms. Simon was not dressed for the weather, had only one shoe on, and seemed very cold. Officer Anderson observed part of the rear seat of the vehicle down with what looked like rope keeping it closed. A piece of used duct tape, partially rolled up, was found on the ground nearby the vehicle. Officer Anderson suggested that Ms. Simon sit in the back seat of his patrol vehicle to keep warm. While sitting in the back seat, Officer Anderson observed her point to his monitor in his patrol car and state, "That's the person that — that did this to me." She identified this person as "Fetty." [The monitor still displayed the photo of Appellant, the vehicle owner.] Ms. Simon told Officer Anderson that this kidnapping took place in Harrisburg City, in the area of Green and Maclay [Streets]. Green [S]treet is between Second and Third Streets. Due to jurisdictional issues, the case was handed over to Harrisburg City police. According to Ms. Simon, she was moved from the Chestnut Apartments to Third or Fourth Street in Harrisburg. This is approximately ten (10) to

- 2 -

fifteen (15) minutes and less than five (5) miles according to Officer Anderson's testimony.

Ms. Simon initially met Appellant through a mutual friend. Ms. Simon needed money to fuel a drug addiction and Appellant arranged dates for her to earn money. After a second date arranged by Appellant, Ms. Simon and Appellant argued over money. Appellant purchased drugs for Ms. Simon and later wished for her to pay him back. Ms. Simon then decided that she would only give Appellant thirty (30) percent of that second date's profit. Ms. Simon testified that Appellant became upset at that point and began to strangle her. Appellant ended up with all of the money made from the second date.

Ms. Simon testified that she decided to get back at Appellant for strangling her and taking all of the money from the second date. After speaking with her boyfriend, Ms. Simon asked Appellant to set up another date in order to set him up. Ms. Simon met Appellant at a Super 8 motel on Eisenhower Boulevard in Swatara. Ms. Simon contacted her boyfriend, Angel, to let him know where they were. Ms. Simon went back into the motel room, Appellant tried to close the door, but Angel came through the doorway and began to beat Appellant up. Angel then took money from Appellant.

Approximately three weeks after this incident, the mutual friend contacted Ms. Simon and asked to meet her on Fourth Street. This mutual friend directed Ms. Simon to go up the street and go to a specific address on North Fourth [S]treet. Ms. Simon felt like a man was following. As Ms. Simon walked down Fourth [S]treet, the man she felt was following her said, "Yo, yo, Shorty." Ms. Simon stopped walking to turn and face the man. The man attempted to make small talk with Ms. Simon and asked for her name. As this conversation is happening, a vehicle pulls up and Ms. Simon recognizes Fetty, or Appellant, get out of the vehicle. Ms. Simon testified that Appellant had a gun in his hoodie pocket. Ms. Simon tried to back up, but Appellant held her so that she could not go anywhere. This turned into a struggle to get Ms. Simon into the backseat of Appellant's vehicle. Appellant opened the trunk and both men threw Ms. Simon into the trunk of Appellant's vehicle. As they began to drive off, Ms. Simon kicked her way through the backseat of the vehicle. They stopped the vehicle in order to tie her up with rope and return her to the trunk of the vehicle. Ms. Simon testified that she feared that she might die that day. After driving for an undetermined amount of time,

the vehicle comes to a stop. The men allow Ms. Simon to crawl back through to the backseat of the vehicle. Ms. Simon recognizes that they have arrived at Allison or Aspen Hill.

At this point, . . . Appellant and the second man questioned Ms. Simon about the beating and robbery of Appellant that Ms. Simon set up with her boyfriend, Angel. Then, the men bound Ms. Simon's ankles and hands. A McDonald's wrapper was placed into her mouth with duct tape placed over the wrapper. During her testimony, Ms. Simon estimates that approximately thirty (30) minutes passed between the time she was initially taken and the time they placed the duct tape over her mouth and bound her. Ms. Simon eventually fell asleep in the trunk of the vehicle. When she woke up, she noticed that the vehicle was not moving anymore, and the music was turned off. After realizing that no one was in the vehicle, Ms. Simon loosened the ropes and began kicking at the backseat. She was able to exit the vehicle and determine that she was at the Chestnut Pointe Apartments. Ms. Simon went to a door in order to borrow a phone. The first person shut the door but called the police. Ms. Simon went upstairs to another door and was permitted to borrow a phone in order to contact her mother. Ms. Simon was taken at 4:30 p.m. and finally got out of the trunk at 11:30 p.m. for a total of seven (7) hours.

\* \* \*

The city of Harrisburg has eleven (11) city cameras placed in high crime areas. [Harrisburg Police] Detective Jon Fustine viewed the camera footage in the area Ms. Simon indicated the incident took place. Detective Fustine was able to see the kidnapping take place on video. The video depicts two men, one wearing a hoodie while holding a handgun.

On December 6, 2017, Detective Fustine obtained an arrest warrant for Appellant. Appellant was taken into custody by police in Maryland on December 9, 2017. Appellant was transferred to Harrisburg on December 13, 2017.

Trial Ct. Op., 9/18/20, at 2-5 (record citations and some footnotes omitted).

A criminal complaint was filed on December 7, 2017, charging Appellant with kidnapping and false imprisonment. Appellant was represented by Joseph Hartye of the Dauphin County Office of the Public Defender. Attorney

Hartye sought defense continuances between May 10, 2018, and January 14, 2019. During that same time period, Appellant filed several *pro se* motions seeking his release on nominal bail and asserting the ineffectiveness of Attorney Hartye.[2] The motions were appropriately forwarded to Attorney Hartye.[3] On February 11, 2019, Attorney Hartye filed a motion for nominal bail pursuant to Pa.R.Crim.P. 600. ***See*** Pa.R.Crim.P. 600(B)(1) (no defendant shall be held in pretrial incarceration for more than 180 days from the date the complaint is filed). The trial court conducted a hearing on March 26, 2019. At the Rule 600 hearing, the Commonwealth acknowledged Appellant has been incarcerated pretrial for two days past the 180-day period set forth in Rule 600(B)(1). ***See*** N.T., 3/26/19, at 2. However, the Commonwealth argued that the violation was *de minimis*, and the court could deny nominal bail because Appellant "was a danger to the community[,] had a violent prior record" and was a flight risk ***Id.*** at 3-4. The trial court agreed, and denied Appellant's petition. Trial was scheduled for April 8, 2019.

Three days before the scheduled trial date, the Commonwealth filed a motion seeking a competency examination of Appellant. Following argument on the morning of the scheduled trial, the court granted the Commonwealth's

---

[2] Throughout this litigation, Appellant has repeatedly and consistently filed *pro se* petitions for relief while represented by counsel.

[3] ***See*** Pa.R.Crim.P. 576(A)(4) (requiring clerk of courts to accept, docket, and forward to defendant's attorney, any motion submitted by defendant *pro se*, when defendant is represented by attorney).

request, and directed that Appellant be evaluated on an inpatient basis at a mental health facility to determine his competency. ***See*** Order, 4/8/19. The trial court based its decision on its "observations over the last several months," during which Appellant had been "basically trying to sabotage [his] own abilities in the courtroom and the defense that's been provided to" him. N.T., 4/8/19, at 3.

On June 4, 2019, conflict counsel, Wendy Grella, Esquire, was appointed to represent Appellant.[4] Three days later, the trial court entered an order directing that Appellant be "immediately transferred to the Torrence State Hospital" for a competency examination. Order, 6/7/19. Appellant avers he was returned to the Dauphin County Prison on October 24, 2019, after having been deemed to be competent.[5] ***See*** Appellant's Brief at 47.

On December 2, 2019, Attorney Grella filed a motion for nominal bail or dismissal of the charges pursuant to Pa.R.Crim.P. 600. She averred more than 365 days had passed since the criminal complaint was filed, and Appellant "has been available for trial at all times since" then. Appellant's Motion for Nominal Bail and/or Dismissal of Charges Pursuant to

_____

[4] During the hearing on the Commonwealth's motion for a competency examination, Appellant stated he had a "conflict of interest" with his attorney, noting there was an "ongoing investigation" against Attorney Hartye based on Appellant's claim that Attorney Hartye "sexually assault[ed]" or "sexually harass[ed]" him. N.T., 4/8/19, at 3.

[5] The certified record does not include a report from the competency examination.

Pa.R.Crim.Proc. Rule 600, 12/2/19, at 2 (unpaginated). The trial court conducted a second Rule 600 hearing on December 19, 2019. At the conclusion of the hearing, the trial court delayed its decision and requested memos from both parties.[6] *See* N.T., 12/19/19, at 7. The court never ruled upon Appellant's dismissal request before trial.

Appellant's jury trial began on January 8, 2020. Appellant testified in his own defense and denied that he ever scheduled "dates" for Simon, or that he abducted her in December of 2017. *See* N.T. Jury Trial, 1/8-9/20, at 277, 291. In fact, Appellant claimed he was visiting his girlfriend in Maryland at the time of the incident, and was using a rental car; his car was parked in front of his house. *Id.* at 285-87. He also testified that Simon and her boyfriend stole a set of car keys from him when they robbed and assaulted him. *Id.* at 287. The next day, the jury found Appellant guilty of both charges.

Appellant was sentenced on March 10, 2020. The Commonwealth sought a mandatory minimum term of 10 years' imprisonment based upon its contention that the kidnapping conviction was Appellant's "second-strike violent crime." N.T. Sentencing H'rg, 3/10/20, at 2. *See* 42 Pa.C.S. § 9714(a)(1) (mandatory minimum 10-year sentence when defendant is conviction of crime of violence and had previously been convicted of crime of

---

[6] The certified record does not include a memo from either Appellant or the Commonwealth on the Rule 600 issue.

violence). Specifically, the Commonwealth introduced a certified copy of Appellant's criminal record in Florida which established he had a prior conviction of "armed robbery." ***See*** N.T., Sentencing H'rg, at 2. Appellant objected to the characterization of his Florida conviction as a prior crime of violence because although he was convicted of armed robbery, he claimed he was not armed with a firearm. ***See id.*** at 6-7. Rather than explicitly ruling on the issue, the trial court stated that "regardless of whether or not [Appellant had] a second strike, [he was] still . . . considered a repeat offender and the guidelines still fall within 10 to 20 years." ***Id.*** at 7. The trial court then imposed a sentence of 10 to 20 years' imprisonment for kidnapping, noting it was an appropriate sentence "[h]aving sat through the trial, as well as hearing the testimony of the victim and the fear and terror that she went through."[7] ***Id.*** at 8. The court further stated that the false imprisonment conviction merged for sentencing purposes. ***Id.***

On March 17, 2020, Appellant filed a timely post-sentence motion seeking modification of his sentence. He asserted his Florida conviction did not qualify as a first-strike for purposes of the mandatory minimum statute,

---

[7] Appellant's sentencing guideline ranges are not included in the certified record. At the sentencing hearing, the Commonwealth's attorney stated they "pass[ed] forward the guidelines." N.T., Sentencing H'rg, at 2. Thus, it appears they were before the court. In his brief, Appellant asserts he was subject to a standard range sentence of 90 to 102 months, with an aggravated range of 114 months. Appellant's Brief at 25. Thus, the 10-to-20-year sentence imposed by the trial court would fall outside the aggravated range of the guidelines.

and the sentence imposed by the trial court was excessive in that the court gave "little consideration" to his background or rehabilitative and mental health needs, but focused on the "negative aspects of the offense[.]" Appellant's Post-Sentence Motion, 3/17/20, at 2 (unpaginated). The trial court denied the motion on May 13, 2020, and this timely appeal followed. After receiving an extension of time, Attorney Grella complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On November 19, 2020, before the briefs were filed in this matter, Appellant filed in this Court a *pro se* motion for appointment of new counsel, asserting, *inter alia*, Attorney Grella refused to assist him in the defense of his case. **See** Appellant's Motion for Appointment of New Counsel, 11/19/20, at 6. By order entered November 24, 2020, we stayed the briefing schedule and directed the trial court to conduct a **Grazier**[8] hearing to determine whether Appellant wished to proceed with Attorney Grella or *pro se*. **See** Order, 11/24/20. The trial court conducted a **Grazier** hearing on December 8, 2020. At the conclusion of the hearing, the court permitted Attoreney Grella to withdraw and appointed new appellate counsel, Kristen Weisenberger, Esquire. The trial court informed this Court that it directed Attorney Weisenberger to file a new Rule 1925(b) statement within 21 days. **See** Letter from trial court, 12/8/20. Thereafter, on February 3, 2021, the trial court

_____

[8] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

notified this Court that Attorney Weisenberger "will not be filing a new [Rule] 1925b statement in this matter[.]" Letter from trial court, 2/3/21.

## II.  ISSUES ON APPEAL

Appellant raises the following four issues on appeal, which we have reordered for ease of review:

I.      Whether the trial court erred in denying Appellant's Rule 600 motion for nominal bail pending trial[?]

II.     Whether the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [Appellant] (1) kidnapped the alleged victim and (2) that he moved her a substantial distance[?]

III.    Whether the trial court erred in denying [Appellant's] motion for a mistrial where the trial court referred to the victim as having been "kidnapped[?]"

IV.     Whether the imposition of an aggregate sentence of ten (10) to twenty (2) years incarceration was excessive given the circumstances of Appellant and when his prior conviction does not qualify as a [first] strike pursuant to 42 Pa.C.S. § 9714[?]

Appellant's Brief at 6-7 (some capitalization removed).

## III.  RULE 600 VIOLATION

In his first claim, Appellant contends the trial court erred in denying his Rule 600 motion.  Pennsylvania Rule of Criminal Procedure 600 protects a defendant's right to a speedy trial, and prohibits excessive pretrial incarceration.  Subsection A mandates, *inter alia*, that trial must "commence within 365 days from the date on which [a written criminal] complaint is filed[.]"  Pa.R.Crim.P. 600(A)(2)(a).  Subsection B pertains to the **pretrial incarceration** of a defendant.  It provides, *inter alia*, that, unless release on

- 10 -

bail is prohibited by law, "no defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the criminal complaint is filed[.]" Pa.R.Crim.P. 600(B)(1).

When a defendant is not brought to trial within the requisite 365-day period, they may seek to have the charges "dismissed with prejudice[.]" Pa.R.Crim.P. 600(D)(1). However, for a violation of the pretrial incarceration rule, a defendant may seek immediate release on "nominal bail." Pa.R.Crim.P. 600(D)(2). The computation of time for each potential violation is different. When considering dismissal of the charges based upon Subsection (A)(2)(a), "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of time[, but a]ny other periods of delay shall be **excluded**[.]" Pa.R.Crim.P. 600(C)(1) (emphasis added). However, when computing time for a purported violation of the pretrial incarceration rule, "only periods of delay caused by the defendant shall be excluded[, and a]ny other periods of delay shall be **included** in the computation." Pa.R.Crim.P. 600(C)(2) (emphasis added). Thus, a trial court's consideration of each of these violations is distinct.

In both his Rule 1925(b) statement, and the Statement of Questions Presented in his brief, Appellant challenges **only** the trial court's denial of his Rule 600 motion for **nominal bail** pending trial. *See* Appellant's Statement of Matters Complained of Pursuant to Pa.R.A.P. 1925(b), 8/20/20; Appellant's Brief at 7, 45. However, in his argument on appeal, Appellant focuses on his

claim that more than 365 days passed before he was brought to trial, that is, a violation of Rule 600(A)(2)(a). **See** Appellant's Brief at 45-50. Specifically, he argues the time period between April 5, 2019, and October 24, 2019 — while he was waiting for a competency examination — "was delay caused the Commonwealth" because it did not seek the examination "in good faith and there was insufficient evidence to support the Commonwealth's request." **Id.** at 48-49. Moreover, Appellant avers the trial court never ruled upon his Rule 600 motion to dismiss prior to trial, and requests the matter be "remanded for an evidentiary hearing." **Id.** at 50.

With regard to the denial of his motion for nominal bail, we note that although Appellant properly preserved the claim in his Rule 1925(b) statement, he provides no argument in his brief as to why the trial court's denial of nominal bail was in error. More importantly, now that Appellant has been convicted, and is no longer in pretrial detention, this issue is technically moot. **See Commonwealth v. Sloan**, 907 A.2d 460, 464-65 (Pa. 2006); **Commonwealth v. Samuel**, 102 A.3d 1001, 1006 (Pa. Super. 2014). We recognize that our Supreme Court has permitted appeals from the "technically moot" denial of pretrial release when the issue involved is "capable of repetition yet evading review" and is "important to the public interest." **Commonwealth v. Dixon**, 907 A.2d 468, 472-73 (Pa. 2006) (citations omitted) (interlocutory appeal by Commonwealth does not extend 180-day period); **Sloan**, 907 A.2d at 465 (release on nominal bail following 180-day pretrial incarceration does not mean "unconditional release;" trial court may

impose non-monetary conditions). However, Appellant makes no claim that his issue on appeal overcomes the mootness doctrine. Accordingly, we decline to address this claim.

With regard to Appellant's assertion that the trial court abused its discretion when it neglected to rule on his Rule 600(A)(2)(a) claim and dismiss the charges against him before trial, we conclude this argument is waived. Appellant did not raise this claim in his court-ordered Rule 1925(b) statement, and the trial court did not address it in its opinion. *See* Trial Ct. Op. at 13-15 (addressing only nominal bail claim); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.). Thus, the claim has not been properly presented for our review.

Nevertheless, we recognize the better practice would have been for the trial court to formally deny Appellant's motion to dismiss on the record. Its failure to do so, however, does not require remand. As noted above, Appellant's argument focuses on the time period from April 5, 2019, through October 24, 2019 — when the Commonwealth sought a competency examination until Appellant was returned to the prison after he was deemed competent. Appellant recognizes that "[i]f a defendant is being examined to determine competency, the time period is generally excludable because he is unavailable for trial until he is deemed competent." Appellant's Brief at 48-49, *citing **Commonwealth v. Mansberry***, 514 A.2d 926 (Pa. Super. 1986). However, he complains that, here, the Commonwealth's petition was not

made in good faith; thus, the time should not be excludable. His assertion is not supported by the record.

Appellant's mental health was at issue throughout the proceedings. Indeed, during an October 22, 2018, listing, Attorney Hartye acknowledged that he might seek a competency evaluation, although it does not appear he ever did so. *See* N.T., 10/22/18, at 2. Subsequently, during the sentencing hearing, Attorney Grella requested the court consider an "involuntary commitment" for Appellant, explaining that "[s]ince trial[,] he had some mental health issues, which included suicidal ideations[,] a hunger strike[, and] banging his head against the walls" at the prison. N.T., Sentencing H'rg, at 5. Furthermore, the trial court commented that it granted the requested examination based upon its own observation of Appellant in court. *See* N.T., 4/8/19, at 3-4. Thus, even if we were to review this claim, we would conclude Appellant would be entitled to no relief.

## IV. SUFFICIENCY OF EVIDENCE

In his second claim, Appellant challenges the sufficiency of the evidence supporting his conviction of kidnapping. Our standard of review is well-settled:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt

- 14 -

may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Green*, 149 A.3d 43, 47–48 (Pa. Super. 2016) (citation omitted).

Appellant challenges only his conviction of kidnapping. In order to secure a conviction for that offense, the Commonwealth must prove the defendant "unlawfully remove[d] another a substantial distance under the circumstances from the place where [the victim] is found, or . . . unlawfully confine[d] another for a substantial period in a place of isolation, with [the intent to, *inter alia*,] inflict bodily injury on or to terrorize the victim or another." 18 Pa.C.S. § 2901(a)(3). In determining whether the victim was moved a substantial distance for purposes of the kidnapping statute, "the incidental movement of the victim during the commission of a crime which does not substantially increase the risk of harm to the victim, does not meet the statutory definition[.]" *In re T.G.*, 836 A.2d 1003, 1006 (Pa. Super. 2003) (citation and quotation marks omitted). However, the term "is not limited to a defined linear distance." *Commonwealth v. Malloy*, 856 A.2d 767, 779 (Pa. 2004). Rather, "[t]he determination of whether the victim was moved a

substantial distance is evaluated 'under the circumstances' of the incident."
*Id.* (citation omitted). **See Commonwealth v. Hughes**, 399 A.2d 694, 696, 698 (Pa. Super. 1979) (abduction of victim at knifepoint from public bench and movement only two miles to isolated, wooded area was sufficient to establish movement of a "substantial distance" under kidnapping statute; the movement placed "the victim in a completely different environmental setting removed from the security of familiar surroundings").

Appellant's challenge to his conviction is two-fold. He first contends the Commonwealth failed to present any evidence that he was Ms. Simon's attacker, whom she identified as "Fetty." Appellant's Brief at 40. Absent any evidence that he was known as "Fetty," Appellant claims that the Commonwealth did not prove he was the one that "committed the act." *Id.* Second, Appellant maintains the evidence was insufficient to establish the victim was moved a "substantial distance." *Id.* at 41 (internal quotation marks omitted). Appellant avers: "[T]he victim testified she was moved from the street to the trunk of the vehicle, which was parked immediately next to the victim." *Id.*, *citing* N.T., Jury Trial, at 115.

In rejecting Appellant's claims, the trial court opined:

[T]he Commonwealth presented evidence, through the testimony of Ms. Simon and Officer Anderson, that Ms. Simon identified Appellant as the person who had a gun and kidnapped her by forcibly throwing her into the trunk of his vehicle. Ms. Simon knew Appellant as Fetty and recognized his face on Officer Anderson's vehicle monitor. Ms. Simon's version of events was corroborated by footage captured by Harrisburg City cameras as viewed by Detective Fustine. One of the men in the video matches the

physical description of the man described by Ms. Simon and identified by her as Fetty, or Appellant. . . .

The Commonwealth also presented evidence . . . that Appellant moved Ms. Simon a substantial distance and for a substantial period of time. . . . In this case, Appellant moved Ms. Simon approximately ten (10) to fifteen (15) minutes away and less than five (5) miles. This is certainly not an incidental movement during the commission of another crime. This confinement lasted approximately seven (7) hours. This is from the time Ms. Simon was thrown into the trunk of Appellant's vehicle to the time Ms. Simon was able to free herself from the vehicle. Seven hours of confinement and isolation is a substantial amount of time. . . .

Trial Ct. Op. at 10-11 (record citations omitted).

The trial court's findings are supported by the record. Ms. Simon's identification of Appellant as "Fetty," if believed by the jury, is, itself, sufficient to support Appellant's identification as her abductor. *See Greene*, 149 A.3d at 48. Indeed, Officer Anderson testified that Ms. Simon saw Appellant's photo on the monitor in his patrol car, and unprompted, told him "That's the person that . . . did this to me." N.T., Jury Trial, at 80. Appellant's assertion that the Commonwealth did not present any **other** testimony that he used the nickname "Fetty," goes to the weight of the evidence, not the sufficiency.

Moreover, Appellant's claim that the Commonwealth did not establish he moved Ms. Simon a substantial distance is based on a mischaracterization of the evidence. Appellant maintains Ms. Simon was moved from the street to the trunk of a car parked nearby. *See* Appellant's Brief at 41. However, he ignores her testimony that her assailants then proceeded to "drive off" with her in the trunk. N.T., Jury Trial, at 118. Ms. Simon testified that she was abducted on the 2100 block of North Fourth Street in Harrisburg — this was

corroborated by video footage in the area. ***See id.*** at 113-15, 251-52. She escaped the vehicle, and sought help, at the Chestnut Pointe Apartments in Swatara Township, which is 10 to 15 minutes, and less than five miles, from the abduction site. ***Id.*** at 90-91. We conclude that, under the facts of this case, Ms. Simon was moved a "substantial distance" for purposes of the kidnapping statute. ***See Hughes***, 399 A.2d at 695-96, 698. Furthermore, as the trial court points out, Ms. Simon's confinement in the trunk of Appellant's car lasted seven hours. ***See*** Trial Ct. Op. at 11. Thus, even if we were to conclude Ms. Simon was not moved a substantial distance, she was "unlawfully confine[d] another for a substantial period in a place of isolation[.]" 18 Pa.C.S. § 2901(a). Accordingly, Appellant's sufficiency challenge fails.

## V.  DENIAL OF MISTRIAL

Next, Appellant asserts the trial court erred when it denied his motion for a mistrial. "A mistrial is an extreme remedy that is only required where the challenged event deprived the accused of a fair and impartial trial." ***Commonwealth v. Laird***, 988 A.2d 618, 638 (Pa. 2010) (citation and quotation marks omitted). Because the trial court has the "discretion to determine whether a defendant was prejudiced by the incident[,]" we review a trial court's denial of a motion for mistrial for an abuse of discretion. ***Commonwealth v. Tejeda***, 834 A.2d 619, 623 (Pa. Super. 2003). Furthermore, "[w]hen the trial court gives adequate cautionary instructions,

declaration of a mistrial is not necessary." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013).

Appellant's claim is based upon the following exchange. During her cross-examination of Ms. Simon, Attorney Grella asked her about a missing purse. *See* N.T., Jury Trial, at 183-84. Although Ms. Simon told the detectives that her abductors took her purse, no purse was recovered from the vehicle. *See id.* at 184. Attorney Grella stated to Ms. Simon, "So you lied to [the detectives,]" to which Ms. Simon replied that her purse was not in the car when she escaped. *Id.* Attempting to clarify Ms. Simon's testimony, the trial court inquired:

> THE COURT: Did you have your purse?
>
> THE WITNESS: No, I didn't.
>
> THE COURT: You never had it the whole time?
>
> THE WITNESS: Oh, during the day I had my purse, yes.
>
> THE COURT: But when you got the call from [your mutual friend] to meet her and **then you ended up getting kidnapped**, did you have your purse?
>
> THE WITNESS: It was on me at the time. . . . So when they took me, they had took my purse and threw me in the trunk. So when I had got out – when I escaped the car, I tried to look for my purse, and it wasn't there.
>
> THE COURT: So you did have your purse when the incident occurred.
>
> THE WITNESS: Yes.

*Id.* at 184-85 (emphasis added). At that point, Attorney Grella asked to approach the bench, and a sidebar discussion was conducted off the record. *See id.* at 185.

Attorney Grella asked Ms. Simon a few more questions, focusing on when Ms. Simon first met Appellant and their mutual friend. *See* N.T., Jury Trial, at 185-86. The Commonwealth's attorney objected to one question, stating it mischaracterized Ms. Simon's testimony. *Id.* at 186. The trial court responded as follows:

THE COURT: It's up to the jury.

And again, any questions that I ask are just for further clarification, but none of my questions are relevant. So I made the mistake of saying not "**alleged kidnapping**."

So when I asked you about the purse before the **alleged kidnapping**, you did have a purse –

THE WITNESS: Yes.

THE COURT: -- prior to that.

THE WITNESS: Yes, I did.

THE COURT: Okay, Thank you.

*Id.* (emphases added). Subsequently, Attorney Grella continued to cross-examine Ms. Simon, after which the Commonwealth conducted a brief redirect examination. *See id.* at 187-203.

After the jury was excused for the day, Attorney Grella objected to the court's reference to Ms. Simon as having been "kidnapped," and moved for a mistrial. N.T., Jury Trial, at 204. She stated: "I think it's prejudicial. I think . . . that's up to the jury to decide." *Id.* The trial court denied the motion

commenting that Ms. Simon "already testified that she was kidnapped" and the court "indicated to the jury that it's their recollection, not [the court's], about the facts." *Id.* at 205. Further, the court noted that the jury had already seen the video of the abduction. *Id.*

Appellant insists he was prejudiced by the trial court "declaring the victim had been kidnap[p]ed." Appellant's Brief at 44. He maintains that, in doing so, the court usurped the jury's role as fact finder. *Id.* Further, Appellant contends the court's "curative instruction" was "insufficient." *Id.* He states: "While the trial court acknowledged she make a 'mistake', the trial court should be held to a higher standard in that [its] words imply a higher importance. If the court is acting without impartiality, then so can the jury." *Id.* at 45 (record citation omitted).

We agree with the ruling of the trial court that its isolated reference to Ms. Simon as having been "kidnapped" — as opposed to "allegedly kidnapped" — was not so prejudicial as to deprive Appellant of a fair trial. *See* Trial Ct. Op. at 12-13. Indeed, before Appellant even lodged an objection, the court clarified to the jury that it made "a mistake" by not referring to the incident as an "alleged kidnapping[,]" and informed the jury that its questions were not relevant. N.T., Jury Trial, at 186. The jury was presumed to follow the court's cautionary instruction. *See Bryant*, 67 A.3d at 728. We disagree with Appellant's characterization of the comment as a declaration that the trial court believed Appellant was guilty. Consequently, this claim fails.

## VII.  SENTENCING CLAIMS

In his final issue, Appellant challenges both the legality and discretionary aspects of his sentence.  By way of background, we note that the Commonwealth sought the imposition of a mandatory minimum 10-year term of imprisonment pursuant to Pennsylvania's Three-Strikes statute.  ***See*** 42 Pa.C.S. § 9714.  To that end, at the sentencing hearing, the Commonwealth introduced a certified copy of Appellant's prior record in Florida, which included a conviction of armed robbery.  ***See*** N.T., Sentencing H'rg, at 2.  The Commonwealth averred that this prior conviction constituted a first crime of violence pursuant to Section 9714, so that Appellant's present conviction of kidnapping — a second crime of violence — would be subject to the mandatory minimum 10-year sentence under the statute.  ***Id.***  Appellant objected to the characterization of his Florida conviction as a first crime of violence.  ***See id.*** at 3, 6-7.  He argued his conviction was for "robbery with a weapon, [but] not a firearm[,]" and that was "stated at [the Florida] sentencing hearing[.]"  ***Id.*** at 7.

Rather than rule upon the objection, the trial court commented:

> Well, even regardless of whether or not you have a second strike, you still are considered a repeat offender and the guidelines still fall within 10 to 20 years.
>
> So even if they determined that that is correct and you're not a second strike, you're still looking at 10 to 20 years in State prison based on your prior record, based on the actions that you've been conducting throughout your life.

N.T., Sentencing H'rg, at 7-8. The court then proceeded to sentence Appellant to a term of 10 to 20 years' imprisonment for kidnapping, based upon "the testimony of the victim and the fear and terror that she went through" and the court's concern for "the safety not only of the victim but of the community as well as the Commonwealth." *Id.* at 8.

Because the trial court "never accepted or rejected the Commonwealth's request that [Appellant] be sentenced pursuant to [Section] 9714(1)[,]" on appeal, Appellant challenges the discretionary aspects of his sentence.[9] Appellant's Brief at 25-26. He contends that his minimum term of 10 years' imprisonment actually falls outside the aggravated range of the sentencing guidelines, and the trial court failed to put adequate reasons on the record for its guidelines departure. Appellant's Brief at 25-26. Appellant also insists the trial court failed to consider his "lack of education and his mental health diagnosis" when imposing its sentence. *Id.* at 27.

However, we need not address Appellant's discretionary aspects of sentencing claims because, as the trial court clarified in its opinion, it imposed the requested mandatory minimum sentence. *See* Trial Ct. Op. at 8. Indeed,

_____

[9] We note Appellant challenged the discretionary aspects of his sentence in a post-sentence motion and complied with the four-part test for raising such claims on appeal. *See Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (in order to invoke Superior Court jurisdiction to consider discretionary aspects of sentencing claim, appellant must file timely appeal, preserve claim at sentencing or in timely post-sentence motion, include Pa.R.A.P. 2119(f) statement in brief, and raise substantial question that sentence imposed is not appropriate under Sentencing Code).

Section 9714(e) specifically states that, when applicable, a trial court has "no authority . . . to impose on an offender . . . **any lesser sentence** than provided for in" the statute. 42 Pa.C.S. § 9714(e) (emphasis added).

Although Appellant does not explicitly challenge the applicability of the statute in his brief, we will briefly address this issue since he asserted at his sentencing hearing that his Florida conviction did not constitute a prior crime of violence. *See* N.T., Sentencing H'rg, at 6-7; *see also Commonwealth v. Harley*, 924 A.2d 1273, 1277 (Pa. Super. 2007) ("Ordinarily, a challenge to the application of a mandatory minimum sentence is a non-waivable challenge to the legality of the sentence.") (citation omitted).

Section 9714 mandates that a trial court impose a minimum sentence of at least 10 years for a crime of violence when the defendant has been previously convicted of a crime of violence. 42 Pa.C.S. § 9714(a)(1). The statute includes a list of enumerated offenses which constitute crimes of violence, including Appellant's conviction herein — kidnapping — and robbery "as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii)[,] or an equivalent crime in another jurisdiction." 42 Pa.C.S. § 9714(g). This Court has held:

> To determine whether a crime in another state is equivalent to a Pennsylvania offense, a court must consider "the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." Additionally, a court shall consider the "underlying public policy behind the two criminal statutes. . . . We note that the offenses do not identically have to mirror each other but must be substantially equivalent to invoke operation of 42 Pa.C.S. § 9714."

***Commonwealth v. Rose***, 172 A.3d 1121, 1132–33 (Pa. Super. 2017) (citations omitted). Furthermore, Section 9714(d) explains that if a defendant contests the accuracy of their prior record, the court must determine, "by a preponderance of the evidence," whether the mandatory minimum section is applicable. 42 Pa.C.S. § 9714(d).

As noted above, only violations of subsections (a)(1)(i), (ii), and (iii) of Pennsylvania's robbery statute qualify as prior crimes of violence under Section 9714. Under those subsections, "[a] person is guilty of robbery if, in the course of committing a theft, he . . . (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or] (iii) commits or threatens immediately to commit any felony of the first or second degree[.]" 18 Pa.C.S. § 3701(a)(1)(i)-(ii). Thus, robbery is considered a prior crime of violence only if the defendant put the victim in fear of "serious bodily injury," that is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

At trial and during the sentencing hearing, the Commonwealth introduced into evidence a "certified copy" of Appellant's criminal record in Florida which indicated he pled guilty in Broward County on October 27, 2009, to one count of "Armed Robbery" for an incident that occurred in March of 2007. ***See*** N.T., Jury Trial, at 296; N.T., Sentencing H'rg, at 2; Commonwealth's Exhibit 33. The attached judgment indicates Appellant pled

- 25 -

guilty to Sections 812.13(1) and (a)(2) of the Florida Criminal Code, which provide, in relevant part:

> (1) "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
>
> (2)(a) If in the course of committing the robbery the offender **carried a firearm or other deadly weapon**, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in [sentencing statutes].

Fla. Stat. § 812.13(1), (2)(a) (emphasis added).

Even if, as he asserts, Appellant did not possess a **firearm** when he committed the robbery, he pled guilty to carrying either a "firearm or other deadly weapon" at the time of the robbery. See Commonwealth's Exhibit 33. We conclude that this particular subsection of Florida's robbery statute is an equivalent crime to Subsection 3701(a)(1)(ii) of Pennsylvania's robbery statute. Indeed, a person who commits a robbery with a "firearm or **other deadly** weapon" necessarily puts the victim in fear of serious bodily injury. Fla. Stat. § 812.13 (2)(a) (emphasis added). Accordingly, the trial court properly found the present kidnapping conviction constituted Appellant's second crime of violence, and imposed the mandatory minimum term of ten years' imprisonment pursuant to Section 9714(a)(1).

Judgment of sentence affirmed. Appellant's *pro se* Application for Extraordinary Relief is DENIED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/23/2021